# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Mark J. GRIJALVA
### Machinery Technician Third Class (E-4), U.S. Coast Guard

### CGCMG 0388
### Docket No. 1482

### May 9, 2023

General court-martial sentenced adjudged on 19 November 2021.

| | |
|---|---|
| Military Judges: | CDR Paul R. Casey, USCG |
| | CAPT Diane M. Croff, USCGR |
| Appellate Defense Counsel: | LT Schuyler B. Millham, USCG |
| | LCDR Kristen R. Bradley, USCG |
| Appellate Government Counsel: | LCDR Daniel P. Halsig, USCG |
| Special Victims' Counsel: | Mr. Paul T. Markland, Esq. |

### BEFORE
### McCLELLAND, BRUBAKER & MANNION
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial including enlisted members. Contrary to his pleas, Appellant was convicted of one specification of false official statement, in violation of Article 107, Uniform Code of Military Justice (UCMJ); one specification of obstructing justice, in violation of Article 131b, UCMJ; and one specification of wrongfully broadcasting an intimate visual image, one specification of accessing a computer application without authority and with intent to defraud, one specification of using without authority a means of identification of another person, and one specification of creating a profile on a computer application with intent to defraud, in violation of Article 134, UCMJ. The court sentenced Appellant to confinement for three months, reduction to E-3, and a bad-conduct discharge. Judgment was entered accordingly.

Before this Court, Appellant has assigned the following errors:

I. The unenumerated Article 134 offense in Specification 2 of Charge III is preempted by Article 117a, which Congress specifically enacted to cover the offense of wrongful broadcast or distribution of intimate visual images.

II. The convening authority's withdrawal of the charges and specifications upon which Appellant had already been arraigned, and then re-referral of them with four additional specifications without appellant's consent, violated Rule for Courts-Martial (R.C.M.) 601(e)(2) and R.C.M. 604(b).

III. Appellant's due process right to timely appellate review was violated, to his prejudice.

IV. The evidence was legally insufficient to support the conviction of Charge I.[1]

Having considered the fourth assignment, we reject it summarily. We discuss the others and affirm.

## Factual background

Appellant, who lived in Silverdale, Washington, was best friends with Mr. R.K., and knew Mr. R.K.'s girlfriend, Ms. B.C., both of whom lived in southern California. In early 2019, Appellant hacked into Ms. B.C.'s Snapchat account by guessing the password after more than fifty attempts. Without her knowledge or consent, he downloaded several nude and clothed pictures of her to his own device. Later, he created a Tinder (dating application) account, using some of the pictures and Ms. B.C.'s name. He communicated with some "matches," texting nude and other pictures of Ms. B.C. and soliciting money in exchange for a promise to meet; he thereby gained about $200.

Appellant made false statements to police in southern California, and later made false statements to Coast Guard Investigative Service special agents about the location of his device that held the pictures of Ms. B.C.

---

[1] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

**Preemption**

Appellant contends that the offense alleged in Specification 2 of Charge III, wrongfully broadcasting an intimate visual image, is preempted by Article 117a, UCMJ. "Whether an Article 134, UCMJ, offense is preempted depends on statutory interpretation, which is a question of law we review de novo." *United States v. Avery*, 79 M.J 363, 366 (C.A.A.F. 2020) (quoting *United States v. Wheeler*, 77 M.J. 289, 291 (C.A.A.F. 2018)) (cleaned up).

"The preemption doctrine prohibits application of Article 134 to conduct covered by Article 80 through 132." *Manual for Courts-Martial, United States* (2019 ed.) (MCM), pt. IV, para. 60.c.(5)(a). "An offense listed in Articles 80 through 132, UCMJ, will only preempt an Article 134, UCMJ, offense if (1) Congress intended to limit prosecution for a particular area of misconduct to offenses defined in those specific articles of the Code, and (2) the offense charged is composed of a residuum of elements of a specific offense." *Avery*, 79 M.J. at 366 (quoting *United States v. Curry*, 35 M.J. 359, 360–61 (C.M.A. 1992)) (cleaned up).

Appellant was convicted of an unenumerated specification under Article 134, UCMJ, alleging: (1) that he knowingly, wrongfully, and without explicit consent broadcast an intimate visual image of Ms. B.C., who is identifiable from the visual image or from information displayed in connection with the visual image when he knew or reasonably should have known that the visual image was made under circumstances in which Ms. B.C. retained a reasonable expectation of privacy regarding any broadcast and when he knew or reasonably should have known that the broadcast of the visual image was likely to cause harm, harassment, or emotional distress for Ms. B.C. or to harm substantially Ms. B.C. with respect to her safety, business, calling, career, reputation, or personal relationships; and (2) that, under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. This embraced all but two of the elements of wrongful broadcast of an intimate visual image under Article 117a, UCMJ: (1) that the intimate visual image involves a person who is at least 18 years of age at the time the intimate visual image was created; and (2) that the accused's conduct, under the circumstances, had a reasonably direct and palpable connection to a military mission or military environment.

3

We assume, without deciding, that this satisfied *Avery*'s residuum prong. This alone, however, "does not trigger operation of the preemption doctrine. In addition, it must be shown that Congress intended the other punitive article to cover a class of offenses in a complete way." *United States v. Kick*, 7 M.J. 82, 85 (C.M.A. 1979). We conclude that the text and legislative history of Article 117a show the contrary.

The statutory language makes clear that Article 117a is tailored to address nonconsensual sharing of intimate images of adults that, "under the circumstances, had a reasonably direct and palpable connection to a military mission or military environment." Article 117a(a)(4). Legislative history shows that the specific statutory purpose for doing so was to target the sharing/broadcasting of intimate images of servicemembers and veterans without their permission.

Article 117a was first proposed as H.R. 2052. In House debate, it was described as responding to "the offensive Marines United Facebook page and others like it. On these pages, male [M]arines posted nude or intimate photos of female servicemembers and veterans without their consent." 163 Cong. Rec. H3052 (daily ed. May 2, 2017) (statement of Rep. Frankel). All but one of the eight speakers during that debate explicitly referenced servicewomen as victims of the conduct sought to be prohibited. 163 Cong. Rec. H3053-H3058 (daily ed. May 2, 2017). The exception did not imply consideration of victims who were not servicewomen, but spoke of "those who traffic in intimate pictures of their teammates." 163 Cong. Rec. H3056 (daily ed. May 2, 2017) (statement of Rep. Bacon).

H.R. 2052 was debated and passed in the House on May 23, 2017. During that debate, too, the speakers referenced servicewomen as victims of the conduct sought to be prohibited. 163 Cong. Rec. H4477-H4480 (daily ed. May 23, 2017).

H.R. 2052 was not passed in the Senate, but its text later became the basis of a provision of the National Defense Authorization Act for 2018. At the suggestion of the Justice Department, the final element was added to the text, requiring that the conduct have a "reasonably direct and palpable connection to a military mission or military environment." This addition was

recommended "to avoid First Amendment concerns." Letter from Stephen E. Boyd, Asst. Att'y Gen., U.S. Dep't of Justice, Office of Legis. Aff., to the Chairmen of the U.S. Senate Comm. on the Armed Services and U.S. House of Representatives Comm. on the Armed Services, at 11 (Nov. 8, 2017), https://www.justice.gov/ola/page/file/1010611/download. Notwithstanding the First Amendment impetus for the addition, we see this addition as also strengthening the argument that Congress did not intend to cover civilian victims or preempt use of Article 134 for such victims.

Appellant asserts that the Marines United Facebook page contained images of civilians as well as servicemembers (Reply br. at 2), and points out an instance of a Senator, while questioning the Commandant of the Marine Corps at a Senate hearing, speaking about a civilian victim (Reply br. at note 2). These are far from persuasive as indicators of legislative intent.

Appellant points out bits of legislative debate that speak more generally and, in isolation, could support an intent that the proposed Article 117a would cover both military and civilian victims. However, the entire context of the debates, as described above, refutes any such intent.

The language of Article 117a, along with the full context of its legislative history, persuades us that Congress intended it to enhance the military's ability to prosecute those who wrongfully broadcast intimate images of fellow servicemembers and others with a military nexus, not cover a class of offenses in a complete way so as to preclude prosecution under Article 134 when there is no such nexus.

**Withdrawal and re-referral**

Appellant asserts that withdrawal of the charges and specifications after he had been arraigned on them, followed by re-referral of the same charges and specifications along with four new specifications, without his consent, violated R.C.M. 601(e)(2) and R.C.M. 604(b). This issue calls for interpretation of the cited Rules, another question of law we review de novo. *United States v. Leahr*, 73 M.J. 364, 369 (C.A.A.F. 2014).

R.C.M. 601(e)(2) provides, in pertinent part:

Additional charges may be joined with other charges for a single trial at any time before arraignment if all necessary procedural requirements concerning the additional charges have been complied with. After arraignment of the accused upon charges, no additional charges may be referred to the same trial without consent of the accused.

R.C.M. 604(b) provides, in pertinent part:

Charges that have been withdrawn from a court-martial may be referred to another court-martial unless the withdrawal was for an improper reason.

This issue was litigated below. The following facts are drawn from the military judge's ruling, Appellate Exhibit 31.[2]

Charges against Appellant were preferred on 4 March 2021. On 28 April 2021, the Government disclosed four additional specifications that were attached to the already-preferred charges. A preliminary hearing was conducted on 5 May 2021, which considered all the charges and specifications, including the four additional ones. All the charges and specifications were referred to court-martial on 17 June 2021. Appellant was arraigned on all the charges and specifications on 7 July 2021. At that time, Appellant moved to dismiss the four additional specifications because they were unsworn.

On 16 July 2021, the Convening Authority withdrew all the charges and specifications, as the Government agreed that the four additional specifications had not been properly preferred. On the same date, identical charges and specifications were preferred and re-referred to court-martial. Appellant was arraigned on these charges on 22 July 2021, which was within 120 days of preferral of the original charges, after accounting for excludable delay.

Not mentioned in the military judge's ruling, but not denied by the Government, was that Appellant never consented to referral of the four additional specifications.

---

[2] The issue was argued in an Article 39(a) session on 1 September 2021, found at R. 120-139. No evidence was presented; there was no dispute between the parties about the facts.

On 4 August 2021, Appellant filed a motion for appropriate relief, objecting to "joinder" of the four additional specifications with the original charges and specifications because it violated R.C.M. 601(e)(2). (Appellate Ex. 29, pp 1-6.) The Government responded. (Appellate Ex. 30.) Appellant filed a reply to the Government's response. (Appellate Ex. 29, pp 7-8.) After argument at an Article 39(a) session on 1 September 2021, the military judge denied the motion on 1 November 2021, ruling that the withdrawal of the original charges was not for an improper reason and did not unfairly prejudice the accused.

We agree with the military judge.

Appellant quotes R.C.M. 601(e)(2), emphasizing "After arraignment of the accused upon charges, no additional charges may be referred to the same trial without consent of the accused," and continues, "In other words, arraignment cuts off the preference that '[o]rdinarily all known charges should be referred to a single court-martial,'" found in the Discussion following R.C.M. 601(e)(2). He further argues, "A convening authority may not simply withdraw charges from a general court-martial in order to add additional ones and then re-refer them all to the same general court-martial for the purpose of circumventing the post-arraignment joinder rule." (Defense br. at 14-15.)[3] It is far from clear that R.C.M. 601(e)(2) prohibits withdrawal and re-referral with additional charges or that doing so constitutes "circumventing the post-arraignment joinder rule." The question is, what is the meaning of "the same trial"? In our view, once charges have been withdrawn from trial, any future action is not "the same trial" and a re-referral does not improperly "circumvent" R.C.M. 601(e)(2).

As for R.C.M. 604(b)'s prohibition of re-referral after withdrawal where the withdrawal was for an improper reason, Appellant contends that the withdrawal in this case was improper because it "[interfered] with Appellant's exercise of his right under R.C.M. 601(e)(2) not to consent to such joinder after arraignment." (Defense br. at 15.) As noted, we do not see R.C.M. 601(e)(2) as prohibiting what was done here. Further, we reject Appellant's claim that withdrawal was improper because it was done to "cover for an error the Government's

---

[3] In support of this proposition, Appellant cites *United States v. Koke*, 32 M.J. 876 (N.M.C.M.R. 1991). We find *Koke* unpersuasive on the point.

negligence had caused." (Defense br. at 16; see also Defense Reply br. at 5.) There is no basis for the notion that the Government may not correct its errors by starting over, which is what was done here. *See Leahr*, 73 M.J. at 370.[4]

As found by the military judge, the original charges were withdrawn because the Government agreed that the four additional specifications were not properly sworn. This was certainly not an improper reason for withdrawal. It is true that the Government could have instead proceeded only on the earlier, non-defective specifications, but this would have left the four additional specifications to a separate trial. Those specifications were based on the facts and circumstances underlying the earlier specifications; two separate trials would have been manifestly duplicative and wasteful.[5] Beyond that, we do not see any basis to find the withdrawal and subsequent re-referral unfair, arbitrary, or prejudicial to Appellant.

### Post-trial delay

Appellant asserts that the period between the completion of the trial and docketing of the case with this Court was presumptively unreasonable under *United States v. Moreno*, 63 M.J. 129 (C.A.A.F. 2006), and *United States v. Tucker*, 82 M.J. 553 (C.G. Ct. Crim. App. 2022), because it exceeded 150 days, and deprived him of his right to timely appellate review.

We apply a presumption of unreasonable delay triggering a due-process analysis when: (1) the record of trial is not docketed with this Court within a total of 150 days of the completion of trial; or (2) we do not complete appellate review and render a decision within eighteen months of docketing. *Tucker*, 82 M.J. at 570.

The record shows the following sequence of post-trial events:

| Date | Event | Days elapsed |
|------|-------|--------------|
| 19 NOV 21 | Sentence adjudged | 0 |
| 30 NOV 21 | CR solicited quotes for transcription services | 11 |

---

[4] The original charges were not dismissed in this case, as they had been in *Leahr*. Nevertheless, the Government started over in this case, as in *Leahr*; that the original charges were not dismissed makes no difference.

[5] The four additional specifications were not duplicative or overlapping with the earlier specifications, other than one earlier specification that resulted in a not-guilty finding, so pursuing them was surely reasonable.

| | | |
|---|---|---|
| 02 DEC 21 | Purchase Request (PR) for transcription services approved | 13 |
| 21 DEC 21 | Convening authority signed action | 10 |
| 28 DEC 21 | Entry of Judgment | 39 |
| 01 FEB 22 | Notice: new PR required for transcription services | 74 |
| 07 FEB 22 | New PR approved | 80 |
| 02 MAR 22 | Transcription contract awarded | 103 |
| 06 APR 22 | Transcript received | 138 |
| 21 APR 22 | Appellant's request for expedited post-trial processing[6] | 153 |
| 10 MAY 22 | Court reporter's certification of ROT | 172 |
| 20 MAY 22 | Military Judge's verification | 182 |
| 10 JUN 22 | Docketing at CGCCA | 203 |

Thus, as the Government concedes, there was presumptively unreasonable delay.

Given presumptively unreasonable delay, we consider the following four factors to determine whether post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo,* 407 U.S. 514, 530 (1972)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136. If we conclude there was a due process violation, we must grant relief unless we are convinced beyond a reasonable doubt that the error is harmless. *United States v. Toohey*, 63 M.J. 353, 363 (C.A.A.F. 2006).

Docketing took place fifty-three days beyond the 150-day period prescribed by *Tucker*. By far the largest component of the period from the end of trial to docketing is attributed to the process of obtaining a transcript. The Government asserts that transcription delays were "associated with a once-in-a-generation service-wide financial management transition which delayed procurements across the Coast Guard." However, since the transcript was received 138 days after the end of trial, but the case was not docketed until 203 days after the end of trial, it is clear that the Government gave no urgency to the post-trial process even aside from producing a transcript. Specifically, it took thirty-four days after the transcript was received for the court reporter to certify the record, and it took twenty-one after the final act, military judge's

---

[6] This information was not in the record of trial transmitted to this Court. It comes from a document which was the subject of Appellant's motion to attach that was granted: a memo dated 21 April 2022 from Appellant's trial defense team to the Convening Authority requesting expedited processing.

verification, for the case to be transmitted to this Court.[7] It is worth noting that the transcript was received before Appellant's request for expedited processing, but after that request, the court reporter's certification still did not occur until nineteen days later.[8]

In short, the length of and reasons for the delay weigh against the Government. As noted, Appellant asserted the right to timely review, shortly after the 150-day period had passed. This factor, too, weighs against the Government.

As to the fourth *Barker* factor, prejudice, *Moreno* identified three sub-factors: oppressive incarceration pending appeal, anxiety and concern, and impairment of ability to present a defense at a rehearing. *Moreno*, 63 M.J. at 139-40. Both the first and third sub-factors depend upon a successful appeal on other issues, which is not present in Appellant's case. Also, Appellant's sentence to confinement was only three months, by which time there could not be any expectation that review would have occurred. Hence there was no prejudice based on the first and third sub-factors.

Concerning anxiety and concern, Appellant asserts anxiety in that he does not have a DD-214 and this "has narrowed the type of jobs [he] can apply to in my community." Appellant's Aff. 5 March 2023.[9] He also asserts that he is ineligible for unemployment insurance because he does not have a DD-214, and provides a printout, ostensibly from the internet, supporting this assertion. *Id.* However, he has held a job at various times. *Id.* He asserts other disadvantages of not having a DD-214.

In *United States v. Allende*, 66 M.J. 142, 145 (C.A.A.F. 2008), the Court of Appeals for the Armed Forces "assume[d] error and proceed[ed] directly to the question of whether any error was harmless beyond a reasonable doubt." Whether or not Appellant's prejudice in the form of anxiety establishes a due process violation need not be addressed separately, as the same issue of

---

[7] Neither of these periods is explained.
[8] The suspicion arises, from this delay and from the fact that the request was not included in the record of trial, that such a request is not taken seriously.
[9] This affidavit was the subject of a motion to attach that was granted.

prejudice will determine whether any error (due process violation) was harmless beyond a reasonable doubt.

An appellant's affidavit that employers declined to consider him for employment is insufficient to establish prejudice in the absence of corroborating documentation from potential employers (or a valid reason for not providing such corroboration). *Allende*, 66 M.J. at 145. "In most cases, the appropriate source of information pertaining to the hiring decisions of a potential employer will be a representative of the potential employer itself." *United States v. Bush*, 68 M.J. 96, 101 (C.A.A.F. 2009). Appellant in this case has not provided corroboration and thus has not established prejudice. As the Court did in *Allende*, we conclude that any error was harmless beyond a reasonable doubt.

We turn now to whether we should grant relief under Article 66(d)(2), UCMJ, and *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). This Court may consider "excessive delay in the processing of the court-martial after the judgment was entered into the record," Article 66(d)(2), UCMJ, formerly called "unexplained and unreasonable post-trial delay," *Tardif*, 57 M.J. at 224.

As previously noted, it took a total of fifty-five unexplained days for the court reporter to certify the record and for the case to be transmitted to this Court, forty of which followed Appellant's request for speedy post-trial processing, indicating a lack of institutional diligence. We find the delay unreasonable. We will disapprove one month of Appellant's sentence to confinement.

### Decision

We determine that the findings are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty are affirmed. Only so much of the sentence as provides for confinement for two months, reduction to E-3 and a bad-conduct discharge is affirmed.

Judges BRUBAKER and MANNION concur.



For the Court,


Christopher R. Jaramillo
Acting Clerk of the Court