# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

v.

## Robert K. WOODS
### Lieutenant (O-3), U.S. Coast Guard

### CGCMG 0387
### Docket No. 1481

### 15 November 2023

General court-martial sentence adjudged on 21 September 2021.

| | |
|---|---|
| Military Judge: | CAPT Ted R. Fowles, USCG |
| Appellate Defense Counsel: | LCDR Kristen R. Bradley, USCG |
| | LT Schuyler B. Millham, USCG |
| Appellate Government Counsel: | LCDR Daniel Halsig, USCG |
| | LT Elizabeth M. Ulan, USCG |

### BEFORE
### McCLELLAND, BRUBAKER & PELL
Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas entered in accordance with a plea agreement, of three specifications of wrongful use of cocaine in violation of Article 112a, Uniform Code of Military Justice (UCMJ). Appellant was sentenced to confinement for nine months and dismissal. Judgment was entered accordingly.

Appellant asserts that: (1) the court-martial lacked jurisdiction over him; and (2) he was denied his right to speedy post-trial processing. We conclude the court-martial had personal jurisdiction, but we grant partial relief for unreasonable post-trial delay.

## Background

During a security clearance review, Appellant disclosed he had used illicit drugs while on active duty. After receiving notice of administrative separation proceedings, Appellant submitted a resignation request in lieu of a board of inquiry. The Coast Guard Office of Personnel Management (OPM), Personnel Service Center (PSC), initially approved the request and established a future separation date of 25 October 2019. However, prior to that, the Air Force Office of Special Investigations notified the Coast Guard Investigative Service (CGIS) that airmen under investigation for drug use had implicated Appellant as a supplier.

CGIS asked OPM to hold the separation in abeyance and provided a brief to the Commander of PSC. Command administrative personnel, apparently unaware of these developments, continued to take steps preparatory to separation, including drafting and executing a DD Form 214 discharge certificate (DD-214). But on 18 October 2019, following up on correspondence from Appellant's command, personnel within OPM canceled Appellant's authority to separate and the Chief of OPM's Boards, Promotions, and Separations Branch (OPM-1) notified Appellant in writing that his separation had been placed in abeyance and that he was to report to his chain of command until further notice. Appellant's commanding officer provided him a copy of the memorandum and counseled him that his discharge date was to be determined.

After charges including wrongful use and distribution of controlled substances were referred to a general court-martial, Appellant entered an agreement to plead guilty to three specifications of drug use in return for withdrawing and dismissing the remaining charges. Prior to his plea, Appellant moved to have the charges dismissed for want of personal jurisdiction, asserting that the Chief of OPM-1 lacked authority to rescind his previously approved administrative separation. The military judge, after considering evidence and argument, concluded the court-martial had personal jurisdiction and denied the motion.

## Jurisdiction

"We review issues of personal jurisdiction de novo, 'accepting the military judge's findings of historical facts unless they are clearly erroneous or unsupported in the record.'"

*United States v. Christensen*, 78 M.J. 1, 4 (C.A.A.F. 2018) (quoting *United States v. Melanson*, 53 M.J. 1, 2 (C.A.A.F. 2000)).

"It is black letter law that *in personam* jurisdiction over a military person is lost upon his or her discharge from the service, absent some saving circumstance or statutory authorization." *United States v. King*, 42 M.J. 79, 80 (C.A.A.F. 1995) (quoting *United States v. Howard,* 20 M.J. 353, 354 (C.M.A. 1985)) (cleaned up). Applying the framework of 10 U.S.C. § 1168(a), our higher court instructs that, in general, "a discharge terminates in personam court-martial jurisdiction after there is '(1) a delivery of a valid discharge certificate; (2) a final accounting of pay; and (3) the undergoing of a 'clearing' process as required under appropriate service regulations to separate the member from military service.' " *United States v. Nettles*, 74 M.J. 289, 290 (C.A.A.F. 2015) (quoting *United States v. Harmon,* 63 M.J. 98, 101 (C.A.A.F. 2006)). These three criteria are, however, not dispositive: if, based on a totality of the circumstances, a strict adherence to the three criteria "go[es] against reason or policy," we may nonetheless conclude the military lost personal jurisdiction. *Christensen*, 78 M.J. at 4–5; *Nettles*, 74 M.J. at 291.

Here, Appellant, upon graduation from the United States Coast Guard Academy, was appointed as a permanent commissioned officer in the Regular Coast Guard pursuant to 14 U.S.C. § 2101. This status, once acquired, "continues until it is legally terminated." Coast Guard Military Separations Manual (COMDTINST M1000.4), para. 1.A.1.a (29 September 2011; Change 6, 21 August 2018); *see also*, Art. 85(b), UCMJ.

Considering the 10 U.S.C. § 1168 criteria and the totality of the circumstances, we conclude Appellant was not discharged and his status as a commissioned officer continued without interruption through his court-martial.

1. *Discharge Certificate*

Coast Guard administrative personnel prepared a DD-214 discharge certificate, which Appellant signed on 7 October 2019 and a yeoman signed on behalf of the Coast Guard on 15 October 2019. But even assuming this completed DD-214 was delivered to Appellant—which

is not clear from the record—the plain intent was that it was not to be effective until the putative separation date of 25 October 2019. It was prepared and signed in advance as an administrative convenience. *See Nettles*, 74 M.J. at 291 ("[N]o delivery can be effective if it is contrary to expressed command intent."). On 18 October 2019, the Coast Guard rescinded Appellant's authority to separate and informed him in writing that, due to new information about "an existing and active CGIS investigation," his separation proceedings were being placed in abeyance and that he was to report to his chain of command until further notice. App. Ex. 111 at 4. On 21 October 2019, his commanding officer provided him a copy of the memorandum and counseled him that his discharge date was to be determined. *Id.*

Appellant refused to sign the memorandum but wrote notes on it objecting to some of its language and indicating that he could not sign the document "as is." *Id.* He does not dispute either that he received the memorandum or that he understood he was not going to be released on 25 October 2019 as had previously been approved. His contention, rather, is that the person who signed the memorandum lacked the authority to place into abeyance his discharge, which had previously been approved by higher authority. But whether this is so and of jurisdictional consequence we need not decide because the military judge, after holding a hearing on the matter, found as fact that it was not the person who signed the memorandum, but the Commander, OPM—a person with undisputed authority to act on officer separations—who "personally made the decision and relied on [his subordinate] to make the notification." *Id.* Appellant asks us to cast this finding aside as clearly erroneous, but we decline: it is supported by evidence in the record, and we accept it. *Christensen*, 78 M.J. at 4.

Accordingly, we conclude that although Appellant's DD-214 was executed in advance, it was effectively rescinded prior to its effective date.

2. *Final Accounting of Pay*

Appellant concedes there was no final accounting of his pay in his case. In fact, he continued to receive active duty pay, allowances, and benefits without interruption. Appellant notes that he signed a form agreeing to allow the Coast Guard to withhold a substantial portion

4

of his final pay on his date of separation, but this was plainly preparatory to a planned discharge, not indicative of a final accounting.

3. *Clearing Process*

Although Appellant took administrative steps in preparation of an expected discharge, we accept the military judge's finding that he never completed the clearing process. Notably, Appellant retained his identification card rather than turning it in, as required of all servicemembers upon separation. Dep't of Def. Inst. 1000.13, Identification (ID) Cards for Members of the Uniformed Services, Their Dependents, and Other Eligible Individuals, encl. (3), para. 2.c. (23 January 2014; Change 1, 14 December 2017).

We also note that Appellant, while explicitly maintaining his non-waivable jurisdictional claim, stipulated as fact that he "has remained on active duty via an indefinite commission since receiving his commission in 2009." Pros. Ex. 1 at 1. Likewise, during the plea colloquy for each specification, Appellant testified that he was on active duty on the date of each offense and had not since been discharged or released from active duty. R. at 987, 989, 1004. We do not view this as dispositive, but it further convinces us that—despite his contention that he *should* have been discharged per his originally-approved resignation request (addressed above)—there was no point in time when he reasonably believed he *had* been discharged or released.

Under the totality of the circumstances, we conclude Appellant was never discharged and that the court-martial had personal jurisdiction over Appellant.

**Post-Trial Delay**

Servicemembers "have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). We review whether Appellant was denied this right de novo, applying a three-tiered analysis. *Id.*

First, we must determine whether the post-trial delay is facially unreasonable. *Id.* at 136. Post-trial delay is presumed to be unreasonable when: (1) the record of trial is not docketed with

this Court within 150 days of the completion of trial; or (2) we do not render a decision within 18 months of docketing. *United States v. Tucker*, 82 M.J. 553, 570 (C.G. Ct. Crim. App. 2022).

Second, facially or presumptively unreasonable delay triggers a full analysis of whether a due process violation occurred by weighing the four *Barker* factors: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo,* 407 U.S. 514, 530 (1972)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136.

Third, and finally, if we conclude there was a due process violation, we must grant relief unless we are convinced beyond a reasonable doubt that the error is harmless. *United States v. Toohey*, 63 M.J. 353, 363 (C.A.A.F. 2006).

The record shows the following sequence of post-trial events:

| Date | Event | Days elapsed |
|------|-------|--------------|
| 21 Sep 21 | Sentence adjudged | 0 |
| 16 Nov 21 | Convening authority signed | 56 |
| 22 Nov 21 | Judgment entered | 62 |
| 25 Feb 22 | Speedy trial right asserted | 157 |
| 27 Feb 22 | Transcript completed | 159 |
| 8 Mar 22 | Military judge received ROT | 168 |
| 16 Mar 22 | Military judge's verification | 176 |
| 17 Mar 22 | Court reporter's certification of ROT | 177 |
| 11 May 22 | ROT transmitted to CGCCA | 232 |
| 23 May 22 | ROT returned to resolve deficiencies | 244 |
| 10 Jun 22 | Docketing at CGCCA | 262 |

As can be seen, the time from completion of trial to docketing exceeded the *Tucker* standard, triggering a full due process analysis. We consider each *Barker* factor in turn.

Length of the Delay

The length of the delay was 262 days—112 days beyond the *Tucker* standard. As the Government points out, this is not as substantial as the delay in cases where our higher court has

found due process violations. *See United States v. Anderson*, 82 M.J. 82, 86 (C.A.A.F. 2022). The 112-day additional delay is nonetheless significant and favors Appellant. *See, e.g., United States v. Grijalva*, 83 M.J. 669, 676 (C.G. Ct. Crim. App. 2023) (granting relief for 53-day additional delay); *United States v. Tardif*, 58 M.J. 714, 714 (C.G. Ct. Crim. App. 2003) (granting relief for 115-day additional delay).

Reasons for the Delay

The Government explains that much of the delay was due to difficulty contracting transcription services in the wake of "a once-in-a-generation service-wide financial management transition," exacerbated by the "loss of critical personnel. . . ." Gov't Answer at 58. But even after a transcript was received, it took another 73 days to initially transmit the record to this Court, which was returned due to significant deficiencies. It was only finally docketed with this Court a total of 103 days after the transcript was received. And even after that, it required correction to append a missing audio recording and transcript of a hearing.

We recognize the challenges posed to individuals in the process by the changeover in the financial management system and personnel—we are not doubting their good faith. But these are matters within the control of the Government. The Coast Guard as a whole remains responsible for providing the personnel and resources necessary to ensure an appropriate level of quality and timeliness in post-trial processing. We know higher-level officials are working on systemic improvement to post-trial processing. We take this opportunity to emphasize the importance of this to the integrity and perception of military justice in the Coast Guard. But in the meantime, both quality and timeliness of records have been suffering—irrespective of particular circumstances frustrating matters in this case.[1] Overall, the reasons for the delay fail to justify it. This weighs in Appellant's favor.

---

[1] In recent years, the records of trial of more than half of the cases referred to this Court have been missing required items.

Assertion of Right to Timely Review and Appeal

Appellant asserted his right to timely review and appeal by email dated 25 February 2022,[2] which weighs in his favor.

Prejudice

"Prejudice due to post-trial delay is assessed in light of the potential impact on the appellate process." *United States v. Anderson*, 82 M.J. 82, 87 (C.A.A.F. 2022). In assessing prejudice, we consider three interests: "(1) prevention of oppressive incarceration pending appeal; (2) anxiety and concern; and (3) limiting the possibility that a convicted person's grounds for appeal and defenses, in case of retrial, might be impaired." *Id.*

Appellant cites only the second interest, asserting he suffered anxiety and concern because he has struggled to gain adequate employment. Appellant, however, must show "constitutionally cognizable anxiety that arises from excessive delay and we 'require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision.' " *Id.* (quoting *Toohey*, 63 M.J. at 361). We conclude Appellant has failed to do so. He shows he applied for, but did not get, a number of jobs, and offers at least one message from a recruiter asking him to send his DD-214. He has not, however, shown that the lack of a DD-214 is what prevented him from getting a job he deems adequate, as opposed to many other factors that may have prevented it.

Balancing these factors together, we conclude there was no due process violation. There was, as mentioned, no cognizable prejudice; nor do we find the delay "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey*, 63 M.J. at 362.

We turn now to whether we should grant relief under Article 66(d)(2), UCMJ, and *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). This Court may, even absent a due process violation, grant appropriate relief if an appellant demonstrates "excessive delay in the processing

---

[2] This email was Appendix A to Appellant's Motion to Attach dated 30 December 2022, granted on 20 January 2023. It would have been appropriate and desirable to include it in the record of trial in the first instance.

of the court-martial after the judgment was entered into the record . . . ." Art. 66(d)(2), UCMJ. We deem it appropriate to do so. The Government went to lengths to explain much of the delay, which we acknowledge, but it remains that the post-trial processing of this case was substandard in both quality and timeliness, and the reasons for delay, at an institutional level, are insufficient.

Appellant urges us to disapprove his dismissal, but that would, in our view, be an inappropriate windfall and disproportionate to the error at issue. We will instead disapprove one month of Appellant's sentence to confinement.

## Decision

Only so much of the sentence as provides for confinement for eight months and a dismissal is approved. We determine that the findings and sentence, as modified, are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as modified, are affirmed.

Chief Judge McCLELLAND and Judge PELL concur.



For the Court,

Sarah P. Valdes
Clerk of the Court