# UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS

## UNITED STATES

### v.

### Dylan C. JAMES
### Gunner's Mate Third Class (E-4), U.S. Coast Guard

### CGCMG 0390
### Docket No. 1485

### 15 November 2023

General court-martial sentenced adjudged on 01 March 2022.

| | |
|---|---|
| Military Judge: | CDR Paul R. Casey, USCG (motions and arraignment) |
| | CAPT Ted R. Fowles, USCG |
| Appellate Defense Counsel: | LCDR Kristen R. Bradley, USCG |
| | LT Schuyler B. Millham, USCG |
| Appellate Government Counsel: | LCDR Daniel P. Halsig, USCG |
| | LT Elizabeth M. Ulan, USCG |

## BEFORE
## McCLELLAND, BRUBAKER & PARKER
Appellate Military Judges

BRUBAKER, Judge:

A military judge sitting as a general court-martial convicted Appellant, consistent with his pleas entered in accordance with a plea agreement, of three specifications of possession of child pornography and one specification of distribution of child pornography in violation of Article 134, Uniform Code of Military Justice (UCMJ). Appellant was sentenced to confinement for six years, reduction to E-1, forfeiture of all pay and allowances, and a dishonorable discharge. Judgment was entered accordingly.

Appellant asserts that: (1) he suffered illegal pretrial punishment; (2) his counsel were ineffective for failing to address or request credit for pretrial confinement conditions; and (3) he

is entitled to relief for unreasonable post-trial delay. We conclude there was no prejudicial error and affirm.

**Illegal Pretrial Punishment**

For the first time on appeal, Appellant asserts he is entitled to additional confinement credit for illegal pretrial punishment in violation of the Fifth Amendment[1] and Article 13, UCMJ. The Government counters that Appellant waived this claim, both by operation of law and affirmatively. We conclude that although Appellant did not waive this claim by operation of law, he did do so affirmatively.

The Government asserts that the United States Court of Appeals for the Armed Forces (CAAF) in *United States v. Inong*, 58 M.J. 460, 465 (C.A.A.F. 2003), established a bright line rule that failure to raise claims of illegal pretrial punishment at trial results in waiver by operation of law. We disagree. *Inong* is an example of what CAAF would later call "the failure of military courts to consistently distinguish between the terms 'waiver' and 'forfeiture.' " *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009). As *Gladue* clarified:

> Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right. The distinction between the terms is important. If an appellant has forfeited a right by failing to raise it at trial, we review for plain error. When, on the other hand, an appellant intentionally waives a known right at trial, it is extinguished and may not be raised on appeal.

*Id*. (quoting *United States v. Olano,* 507 U.S. 725 (1993); *United States v. Harcrow*, 66 M.J. 154, 156 (C.A.A.F. 2008)) (cleaned up).

The holding of *Inong* is that "failure at trial to seek sentence relief for violations of Article 13 waives that issue on appeal *absent plain error*." *Inong*, 58 M.J. at 465 (emphasis added). Because a court only reviews for plain error if an issue is forfeited, not waived, *Inong* is clearly one of those pre-*Gladue* cases that used the word "waiver" but actually meant "forfeiture." *See Gladue*, 67 M.J. at 313; *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (noting instances where rules use the word "waiver," but actually mean "forfeiture" because they also mention plain error review).

---

[1] U.S. Const. amend. V.

Additionally, since *Inong*, the rule underpinning that decision, R.C.M. 905, has been amended. Whereas it previously used the word "waive," and thus was considered a "raise or *waive*" rule, *Inong*, 58 M.J. at 464 (citing R.C.M. 905(e), MCM (2002 ed.)) (emphasis added), it now expressly provides for forfeiture, not waiver. R.C.M. 905(e), MCM (2019 ed.); *United States v. Shafran*, __ M.J. __, No. 1480, 2023 WL 6534065, at *3 (C.G. Ct. Crim. App. Oct. 6, 2023). Accordingly, neither case law nor rule provides that an unraised claim of illegal pretrial punishment is waived by operation of law.

We agree with the Government, however, that Appellant *affirmatively* waived this claim. He voluntarily entered a plea agreement where he "specifically agree[d] to waive all motions except those that are non-waivable pursuant to R.C.M. 705(c)(1) or otherwise." App. Ex. XXII at 6. A "waive all waivable motions" term such as this is permissible and constitutes an affirmative waiver of all issues that, under the law, may be waived. R.C.M. 705(c), 907(b); *Gladue*, 67 M.J. at 314; *United States v. Spykerman*, 81 M.J. 709, 723 (N-M. Ct. Crim. App. 2021). Claims of illegal pretrial punishment are waivable by plea agreement. R.C.M. 705(c); *United States v. McFadyen*, 51 M.J. 289, 289 (C.A.A.F. 1999); *Spykerman*, 81 M.J. at 723. However, to ensure that such waivers are "executed with full knowledge of the implications of the waiver," a military judge "should inquire into the circumstances of the pretrial confinement and the voluntariness of the waiver, and ensure that the accused understands the remedy to which he would be entitled if he made a successful motion." *McFadyen*, 51 M.J. at 289.

Here, the military judge reviewed each term of the plea agreement, including the "waive all waivable motions" clause, to ensure Appellant understood and agreed freely and voluntarily. Although it was in the context of a withdrawn motion alleging unlawful pretrial *confinement* as opposed to punishment, the military judge specifically advised Appellant that if he accepted his waiver of the Article 13 issue, he would not order any credit to be applied against his sentence for illegal pretrial punishment. He nevertheless invited Appellant to bring to the court's attention any perceived pretrial punishment during the sentencing phase of the court-martial for consideration in deciding an appropriate sentence. Finally, the military judge asked trial defense counsel and Appellant himself whether Appellant had been punished in any way that would

constitute illegal pretrial punishment. Both attested he had not. The military judge then accepted Appellant's unconditional pleas of guilty.

Appellant offers that at the time he signed the agreement, he was not yet in pretrial confinement, so the conditions he now wishes to get credit for had not yet occurred. But in a plea agreement, both parties agree to conditions that may not have yet occurred at the time of signing. One such condition was that Appellant would "waive *all* motions except those that are non-waivable," App. Ex. XXII at 6 (emphasis added). At the time of his guilty plea, he understood this term and that he was free to withdraw from it if he desired. He did not, instead choosing to adhere to it in exchange for favorable terms, including a substantial reduction in the amount of confinement he faced.

We find his waiver knowing and voluntary. Recognizing our authority to pierce this waiver under Article 66(d)(1), UCMJ and *United States v. Chin*, 75 M.J. 220, 222 (C.A.A.F. 2016), we decline to do so.

**Ineffective Assistance of Counsel**

We review Appellant's claim of ineffective assistance of counsel de novo. *United States v. Akbar*, 74 M.J. 364, 379 (C.A.A.F. 2015). The bar to prevail is high. *Id*. at 371. An appellant must show: (1) that his counsel's performance was deficient, that is, fell below an objective standard of reasonableness; and (2) that but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. *Id*. (citing *Strickland v. Washington*, 466 U.S. 668 (1984)).

To establish the first prong, an appellant must overcome a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. This presumption "is rebutted by a showing of specific errors made by defense counsel that were unreasonable under prevailing professional norms." *United States v. Davis*, 60 M.J. 469, 473 (C.A.A.F.2005) (citation omitted). "An appellant must establish a factual foundation for a claim of ineffectiveness; second-guessing, sweeping generalizations, and hindsight will not suffice." *Id*. (citations omitted). In assessing counsel's performance, "we do

not measure deficiency based on the success of a trial defense counsel's strategy, but instead examine whether counsel made an objectively reasonable choice in strategy from the available alternatives." *Akbar*, 74 M.J. at 379 (citing *United States v. Dewrell*, 55 M.J. 131, 136 (C.A.A.F. 2001)) (internal quotation marks omitted).

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91. "In considering whether an investigation was thorough, '[w]e address not what is prudent or appropriate, but only what is constitutionally compelled.' " *Akbar* at 379–80 (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Moving to the second prong, even when there is deficient performance, it must be so prejudicial "as to indicate a denial of a fair trial or a trial whose result is unreliable." *Davis*, 60 M.J. at 473 (citation omitted). The appellant must show that but for the deficient performance, there is a reasonable probability that the outcome would have been different. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Here, Appellant asserts that even if he waived the issue of illegal pretrial punishment, his counsel were ineffective for failing to address or request additional confinement credit for his conditions in pretrial confinement. In an affidavit, Appellant details his allegedly arduous conditions, including denial of needed medical supplies, mental health care, and medication. He alleges he informed his counsel of at least some of these complaints.

Responsive to our order, Appellant's trial defense counsel provided affidavits. Lieutenant Commander (LCDR) LR, who represented Appellant throughout the proceedings and was joined later by LCDR AM, states that at several junctures, he discussed Appellant's health and well-being with him, specifically his medical treatment, and advised that if he was not being treated well, he could receive additional confinement credit. Later, he, LCDR AM, and Appellant

discussed the pros and cons of filing a motion for additional confinement credit and the risk that this would—considering Appellant's agreement to waive all waivable motions in return for desirable terms in the plea agreement—cause the Government to withdraw from the agreement. After reviewing case law and discussing the matter with supervisory counsel, LCDR LR and LCDR AM spoke again to Appellant about the pros and cons of filing the motion and risk of losing the protections of the plea agreement. They offered, instead, the alternative of eliciting confinement conditions through his unsworn statement and arguing it as mitigation. Appellant, too, was concerned about losing the benefit of his plea agreement and chose to use the evidence as mitigation rather than seeking additional confinement credit through a motion.

In her affidavit, LCDR AM states that upon joining the trial defense team, it was immediately apparent, and she understood, that Appellant had significant mental and physical healthcare needs. She and LCDR LR investigated Appellant's conditions in pretrial confinement and sought relief for it, including meeting with brig personnel and obtaining a rehearing before the initial review officer to argue Appellant should be released to provide better access to medical facilities and treatment. But after discussing the matter with colleagues and conducting legal research, the defense team, including Appellant, decided the best course of action was to raise pretrial confinement conditions as mitigation evidence rather than a separate motion that could be deemed a breach of the agreement to waive all waivable motions. LCDR AM went on to explain:

> It was absolutely a considered decision of the trial defense team to present these matters in sentencing rather than as a motion for relief due to unlawful pretrial punishment because the Appellant made a decision [subsequent to his placement in pretrial confinement] that he wanted to persist as a party to the plea agreement he had negotiated under the previously negotiated terms, to include the motions waiver provision.

LCDR AM's Aff. at 3.

Even if we assume Appellant's assertions on appeal are true, he fails to establish either deficient performance by his counsel or prejudice. *See United States v. Ginn*, 47 M.J. 236, 248 (C.A.A.F. 1997). Appellant entered into an agreement that in return for favorable terms, he would waive all waivable motions. His counsel assisted him in deciding what to do, but both

they and the military judge ensured that Appellant personally understood the agreement and still wished to be bound by it before accepting his pleas. Appellant made his choice.

It was likely a wise one. In advising on whether to file a motion for additional confinement credit despite the agreement to waive all such motions, trial defense counsel acted well within professional norms. Their concern that filing such a motion would be deemed a breach and prompt the Government to withdraw from the agreement was well-considered and legitimate. Appellant was charged with possession and distribution of numerous images and videos of child pornography. Without getting into unnecessary details, many of these images and videos were horrific—on the high end of the scale in terms of aggravation. Without an agreement, he faced up to 50 years of confinement. His agreement provided for a maximum of six. Under these circumstances, it was a reasonable strategic decision to advise Appellant to continue to abide by the terms of his plea agreement, waive any motion for additional confinement credit, and instead raise the alleged conditions of his confinement during his unsworn statement for the military judge's consideration as mitigation.

Appellant also fails to meet *Strickland*'s second prong: that but for his counsel's deficient performance, there is a reasonable probability that the result of the proceeding would have been different. He does not even allege that but for his counsel's errors, he would have elected to withdraw from the agreement and plead not guilty or plead guilty without the benefit of an agreement. *See United States v. Bradley*, 71 M.J. 13, 16 (C.A.A.F. 2012). And the risk was real that if he filed a motion for additional confinement credit without renegotiating his agreement to waive all such motions, the Government would withdraw. It is entirely speculative that any additional confinement credit he might have gotten through filing a motion would have exceeded additional confinement he might have been adjudged absent an agreement limiting it.

Accordingly, we reject Appellant's claim that his counsel were ineffective.

**Post-Trial Delay**

Servicemembers "have a due process right to timely review and appeal of courts-martial convictions." *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006). We review whether Appellant was denied this right de novo, applying a three-tiered analysis. *Id.*

First, we must determine whether the post-trial delay is facially unreasonable. *Id.* at 136. Post-trial delay is presumed to be unreasonable when: (1) the record of trial is not docketed with this Court within 150 days of the completion of trial; or (2) we do not render a decision within 18 months of docketing. *United States v. Tucker*, 82 M.J. 553, 570 (C.G. Ct. Crim. App. 2022).

Second, facially or presumptively unreasonable delay triggers a full analysis of whether a due process violation occurred by weighing the four *Barker* factors: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice. *Moreno*, 63 M.J. at 135 (citing *Barker v. Wingo,* 407 U.S. 514, 530 (1972)). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Id.* at 136.

Third, and finally, if we conclude there was a due process violation, we must grant relief unless we are convinced beyond a reasonable doubt that the error is harmless. *United States v. Toohey*, 63 M.J. 353, 363 (C.A.A.F. 2006).

The record shows the following sequence of post-trial events:

| Date | Event | Days elapsed |
|---|---|---|
| 1 Mar 22 | Sentence adjudged | 0 |
| 11 Mar 22 | Transcript certified | 10 |
| 13 Apr 22 | Convening authority signed | 43 |
| 14 Apr 22 | Judgment entered | 44 |
| 2 May 22 | Military judge verified ROT | 63 |
| 1 Jun 22 | Court reporter certified ROT | 93 |
| | 2-volume ROT shipped to CGCCA | |
| | Digital copies of ROT made available | |
| 10 Jun 22 | Memorandum signed transmitting ROT to CGCCA | 102 |

|           | Clerk notified records custodian that only 1 of 2 volumes received |     |
|-----------|---------------------------------------------------------------------|-----|
| 27 Sep 22 | Reconstructed missing volume shipped                                | 210 |
| 12 Oct 22 | Clerk noted discrepancies                                           | 225 |
| 27 Oct 22 | Appellant asserted speedy trial right                              | 240 |
| 28 Nov 22 | Appellant again asserted speedy trial right                        | 272 |
| 30 Nov 22 | Docketed at CGCCA                                                   | 274 |

As can be seen, the time from completion of trial to docketing exceeded the *Tucker* standard, triggering a full due process analysis. We consider each *Barker* factor in turn.

1. *Length of the Delay*

The length of the delay was 274 days—124 days beyond the *Tucker* standard. Although this is not as substantial as the delay in cases where our higher court has found due process violations, *see United States v. Anderson*, 82 M.J. 82, 86 (C.A.A.F. 2022), the additional delay is nonetheless significant and favors Appellant. *See, e.g., United States v. Grijalva*, 83 M.J. 669, 676 (C.G. Ct. Crim. App. 2023) (granting relief for 53-day additional delay); *United States v. Tardif*, 58 M.J. 714, 714 (C.G. Ct. Crim. App. 2003) (granting relief for 115-day additional delay).

2. *Reasons for the Delay*

The Government initially shipped both volumes of the record of trial well within established timelines. Through no discernable lack of due care or diligence on their part, one of the two volumes was separated and lost in transit. Once this was discovered, it took the Government 108 days to reconstruct the volume. The Government explains it had to not only reproduce the volume, but obtain affidavits for all documents requiring original signatures pursuant to this Court's direction. There was particular delay in obtaining an affidavit from the convening authority, who had retired from the Coast Guard and was difficult to reach and get his signature. The Government provided a detailed chronology of its efforts to reconstruct the volume consistent with the Court's standards. Given all the circumstances, we conclude that the Government has offered sufficient justification for the 108 days it took to reconstruct the volume. The additional 64 days it took to correct discrepancies noted by the Clerk of the Court

was less justified, but on the whole, we conclude that the Government acted with diligence and a sense of urgency. This weighs in the Government's favor.

### 3. *Assertion of Right to Timely Review and Appeal*

Appellant asserted his right to timely review and appeal on 27 October 2022 and again on 28 November 2022. This weighs in his favor.

### 4. *Prejudice*

"Prejudice due to post-trial delay is assessed in light of the potential impact on the appellate process." *Anderson*, 82 M.J. at 87. In assessing prejudice, we consider three interests: "(1) prevention of oppressive incarceration pending appeal; (2) anxiety and concern; and (3) limiting the possibility that a convicted person's grounds for appeal and defenses, in case of retrial, might be impaired." *Id.*

Appellant cites only the second interest, asserting he experienced anxiety and concern because (1) he was unable to submit a package for a clemency board held in October 2022; and (2) he is "forced to wonder" where the missing volume is and what happened to the sensitive information about him. Appellant's Br. at 43–44. Appellant, however, has the burden of showing "constitutionally cognizable anxiety that arises from excessive delay and we require an appellant to show particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision." *Anderson*, 82 M.J. at 87 (quoting *Toohey*, 63 M.J. at 361).

We conclude Appellant has failed to do so. First, appellate defense counsel had access to a digital copy of the complete record of trial in June 2022. Appellant does not explain why a package could not be compiled for a clemency board using this copy—he would not have had originals even if this Court did at that point anyway—or why the case not yet being docketed with this Court had anything to do with his eligibility for early release. Second, as CAAF stated in *Anderson*, "the likelihood of receiving parole or clemency is highly speculative and there is no indication Appellant would have been granted either at the earliest possible date." 82 M.J. at 87. Third, although appellate defense counsel argues about the impact of misplacing sensitive data,

Appellant makes no mention of this in his affidavit. We are thus left with no competent evidence of any anxiety he may feel about that. Finally, even if there were competent evidence, that anxiety would be the result of the loss of part of the package, not of the delay in post-trial processing. There was thus no cognizable prejudice, which weighs in the Government's favor.

Balancing the factors together, and noting that the delay was not "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system," *Toohey*, 63 M.J. at 362, we conclude there was no due process violation.

We turn now to whether we should grant relief under Article 66(d)(2), UCMJ, and *United States v. Tardif*, 57 M.J. 219 (C.A.A.F. 2002). Even in the absence of a due process violation, this Court may grant appropriate relief if an appellant demonstrates "excessive delay in the processing of the court-martial after the judgment was entered into the record . . . ." Art. 66(d)(2), UCMJ. We decline to do so. Unlike other cases where we noted the potential for cognizable prejudice but an appellant's difficulty substantiating it, *see, e.g., United States v. Guzman*, 79 M.J. 856, 868 (C.G. Ct. Crim. App. 2020), here, we believe there was no cognizable prejudice. Furthermore, unlike other cases where we found that unexplained delay "indicat[es] a lack of institutional diligence," *Grijalva*, 83 M.J. at 677, we see no such indications in this case.

## Decision

We determine that the findings and sentence are correct in law and fact and, on the basis of the entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Chief Judge McCLELLAND and Judge PARKER concur.



For the Court,

Sarah P. Valdes
Clerk of the Court

11