*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
KISOR, DALY, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Jeremy W. HARBORTH**
Chief Master-at-Arms (E-7), U.S. Navy
*Appellant*

**No. 202200157**

_____

Decided: 21 December 2023

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
Melanie J. Mann (arraignment and motions)
Chad C. Temple (motions and trial)

Sentence adjudged 18 March 2022 by a general court-martial convened at Joint Base Pearl Harbor Hickam, Honolulu, Hawaii, consisting of officer and enlisted members. Sentence in the Entry of Judgment: confinement for 18 months and a bad-conduct discharge.[1]

For Appellant:
*Lieutenant Colonel Matthew E. Neely, USMC*

---

[1] Appellant is credited with having served one day of pretrial confinement.

For Appellee:
*Lieutenant Commander Paul S. LaPlante, JAGC, USN*
*Captain Tyler W. Blair, USMC*

Judge MIZER delivered the opinion of the Court, in which Senior Judge KISOR and Judge DALY joined.

———————————————

**PUBLISHED OPINION OF THE COURT**

———————————————

MIZER, Judge:

Appellant was convicted, contrary to his pleas, of three specifications of indecent visual recording, in violation of Article 120c, Uniform Code of Military Justice [UCMJ],[2] and one specification of production of child pornography, in violation of Article 134, UCMJ,[3] for recording and producing child pornography of Ms. November, a minor.[4]

Appellant asserts six assignments of error (AOEs): (1) whether Appellant's Fourth Amendment rights were violated when his electronic devices were seized and held for over three months without authorization; (2) whether trial defense counsel was ineffective for not raising a specific objection to the unlawful seizure of Appellant's digital devices; (3) whether the military judge erred in allowing testimony to prove the contents of an email without requiring the Government to prove any exception to the Best Evidence Rule; (4) whether trial defense counsel was ineffective for not objecting to the Government's use of testimony to prove videos' contents; (5) whether evidence presented at trial was legally and factually sufficient to support a conviction of Charge II, Specification 3; and (6) whether Appellant was entitled to a unanimous verdict.

We agree, in part, with Appellant's first assignment of error that the Fourth Amendment was violated when his electronic devices were seized and held for over three months without authorization. Specifically, we conclude Appellant waived his argument that the seizure of his iPhone Xs violated the

———————————————

[2] 10 U.S.C. § 920c.

[3] 10 U.S.C. § 934.

[4] All names in this opinion, other than those of Appellant, the judges, and counsel, are pseudonyms.

Fourth Amendment. But we agree the seizure of his iPad 4 and iPhone 6s violated the Fourth Amendment's prohibition against unreasonable seizures, and conclude that the evidence obtained as a result should be suppressed.

As set forth below in our decretal paragraph, we affirm Specification 2 of Charge I, which alleges the indecent recording of Ms. November in 2019, because we are convinced that the constitutional error in this case was harmless beyond a reasonable doubt with respect to that offense. But we conclude that Specification 3 of Charge I, which alleges the indecent recording of another minor, Ms. Papa, should be dismissed with prejudice because the evidence establishing that offense came solely from Appellant's iPad 4.

Finally, we set aside the findings with respect to Specification 1 of Charge I, which alleges the indecent recording of Ms. November in 2018, and the sole remaining Specification under Charge II, which alleges the production of child pornography by recording Ms. November between August 2016 and December 2018. The sentence is also set aside, and a rehearing as to findings (with the exception of Specification 3 of Charge I) and sentence is authorized.

In light of our decision, we need not address Appellant's remaining assignments of error, except as set forth below.[5]

## I. BACKGROUND

*1. The Discovery of a Partially Nude Image of Appellant's Step-Daughter on Appellant's iPhone Xs.*

On Saturday, 11 May 2019, Appellant, his wife (Ms. Hotel), and his step-daughter, Ms. November, who was then 15-years-old, were on their way to Makaha Beach on Oahu, Hawaii, to celebrate Mother's Day a day early because Ms. Hotel had to work the next day. But when the family stopped for lunch, a fight erupted over Ms. Hotel's suspicions that Appellant was having an affair.[6]

As their argument escalated, they returned to Appellant's truck and began driving home.[7] When Ms. Hotel demanded to see Appellant's iPhone Xs, he told her there were some inappropriate photos on his phone of a woman he had met

---

[5] In accordance with *United States v. Anderson*, 83 M.J. 291 (C.A.A.F. 2023), we hold Appellant was not entitled to a unanimous verdict at his court-martial.

[6] R. at 994.

[7] R. at 995.

on Facebook, and he wanted to erase them first.[8] As he drove, Appellant appeared to be deleting something on his phone.[9] He continued to refuse to give Ms. Hotel his phone, and so Ms. November finally grabbed it and handed it to her mother.[10] Ms. Hotel then demanded Appellant's passcode for the iPhone, and he eventually gave it to her.[11]

When they arrived home, Ms. Hotel took her daughter into the house and instructed her to lock all of the doors so that Appellant could not get in.[12] Ms. Hotel then began searching Appellant's phone.[13] After finding nothing, Ms. November suggested that her mother should look at the deleted photos, and showed her where to find them.[14] It was there that Ms. Hotel found four photographs that appeared to be screenshots taken from a camera in Ms. November's bedroom, which was part of the family's Vivint home security system.[15] She was changing clothes in the pictures, and in one picture she had taken off her shirt, exposing her breasts to the camera. Two other photos were of Ms. November sunbathing in a bikini on the beach.[16] After finding the images, Ms. Hotel called the Honolulu Police Department (HPD).

### 2. The Struggle for Appellant's iPhone Xs.

With HPD officers on their way, Appellant tried to get into the house.[17] He unlocked the front door, but Ms. Hotel engaged a security bar at the top and he was unable to get in. As Appellant struggled to force his way in, Ms. Hotel retrieved a hammer from the garage, which her daughter took from her.[18]

---

[8] Appellate Ex. XXXII at 2; R. at 995.

[9] R. at 888-89.

[10] Appellate Ex. XXXII at 2.

[11] Appellate Ex. XXXII at 2.

[12] R. at 996.

[13] R. at 997.

[14] R. at 997.

[15] R. at 997; Pros. Ex. 2.

[16] R. at 1000.

[17] R. at 1081.

[18] R. at 1084.

Soon thereafter, another camera from the Vivint system captured Appellant entering the garage through a side door where he was immediately confronted by Ms. Hotel and Ms. November.[19] Startled, Ms. November put Appellant's iPhone Xs behind her back.[20] There is no audio for the video, but Ms. Hotel testified that she asked Appellant if he had "pleasured himself" with the pictures of his stepdaughter.[21] He replied, "No, no, but I thought about it."[22] The video captures Ms. Hotel punching Appellant in the face and shoving him out of the garage.[23]

A third video ends with Appellant reaching for his iPhone Xs and Ms. November putting it again behind her back. In the fourth video, Ms. Hotel points at her daughter, and Ms. November takes Appellant's phone somewhere off camera.[24] Together, the five videos show Appellant struggling to enter the garage with the last one showing Ms. Hotel and her daughter finally succeeding in pushing Appellant out of the garage and locking the door.

### 3. The HPD Officers Arrest Appellant and Seize his iPhone Xs.

When HPD Officer Tango arrived at the house, he found Appellant in front of the house.[25] Appellant told Officer Tango that he and his wife had gotten into an argument over inappropriate photos of his stepdaughter.[26] When Officer Tango told Appellant that he was just trying to figure out what was going on, and that nobody was in trouble yet, Appellant responded, "It's bad, I need help. You should just arrest me now."[27]

Officer Tango then left Appellant with another HPD officer so that he could speak with Ms. Hotel.[28] Ms. Hotel was distraught and showed Officer Tango Appellant's still unlocked iPhone Xs and the four screenshots she and Ms. November found in the phone's deleted photos. Another HPD officer, Officer

---

[19] Pros. Ex. 3.

[20] Pros. Ex. 3; R. at 899.

[21] R. at 1002.

[22] R. at 1002.

[23] Pros. Ex. 3.

[24] R. at 900.

[25] R. at 1137.

[26] R. at 1137.

[27] R. at 1137.

[28] R. at 950; 1138.

Bravo, took pictures of the images on Appellant's phone at the scene.[29] The officers then seized Appellant's iPhone Xs and took Appellant briefly into custody.[30]

Before they left, Ms. Hotel gathered several of Appellant's other Apple devices, including an iPad 4, an iPad 2, and an iPhone 4s, and she tried to give them to Officer Tango.[31] He declined to take them because, as he would explain at trial, "there was no probable cause that the devices had content relevant to this particular case."[32]

Two days later, Ms. Hotel tried to give the devices to the police again, and this time she succeeded.[33] An HPD Incident Report states that Ms. Hotel submitted two iPads and an iPhone as evidence in Appellant's case.[34]

*4. NCIS Opens an Investigation and Assumes Jurisdiction from HPD.*

The Naval Criminal Investigative Service (NCIS) opened an investigation the same day Appellant was arrested.[35] The case was initially assigned to Special Agent (SA) Kilo, who was preparing to leave Hawaii for a new assignment.[36] Nevertheless, on 14 May 2019, one of SA Kilo's supervisors sent SA Kilo an email saying NCIS would "have to hit this one hard," and to let him know if he needed more people to help him.[37] According to the email, the Permissive Authorization for Search and Seizure (PASS) and Command Authorization for Search and Seizure (CASS) of Appellant's devices were pending.[38]

The next day, Ms. Hotel consented to the PASS authorizing NCIS to search the Harborth's home for "electronic evidence."[39] When the NCIS agents arrived, Ms. Hotel gave them a box of Appellant's digital media saying, "here's

---

[29] R. at 1138. The pictures would ultimately be admitted at Appellant's court-martial as Prosecution Exhibit 2.

[30] R. at 1151.

[31] R. at 1151.

[32] R. at 1151.

[33] Appellate Ex. XXXII at 13.

[34] Appellate Ex. XXXII at 13.

[35] Appellate Ex. XLI at 13.

[36] R. at 222.

[37] Appellate Ex. XLI at 13.

[38] Appellate Ex. XLI at 13.

[39] Appellate Ex. XXXII at 21.

some stuff that might be helpful to you."[40] She explained that she had gone through the house looking for items that belonged to Appellant.[41] The box contained Secure Digital (SD) cards, discs, thumb drives, and an iPhone 6s, which was bent and broken from when Appellant closed the door of his truck on the phone.[42] It even included Appellant's iPod[43] digital music player.[44] Altogether, there were twenty-two of Appellant's electronic devices in the box.[45]

Ms. Hotel also showed the NCIS agents the Vivint security panel which was located on a wall by the front door of the Harborth's home.[46] The agents watched as Ms. Hotel scrolled through recently recorded videos on the panel, and some of them captured Ms. November changing her clothes.[47] With Ms. Hotel's permission, NCIS seized the Vivint security panel.[48] She also told the agents that she had previously provided HPD with two iPads and two iPhones that belonged to Appellant.[49] NCIS agents took the box containing Appellant's electronic media and the Vivint security panel back to the NCIS Hawaii Field Office.[50]

Nine days later, NCIS agents retrieved Appellant's iPhone Xs, two iPads, and his iPhone 4s from HPD.[51] The NCIS agents put all of Appellant's Apple devices into airplane mode and placed them in a Faraday box.[52]

---

[40] R. at 289.

[41] R. at 289; 292; 299.

[42] Appellate Ex. XXXII at 21; R. at 287-88.

[43] The iPod was a digital music player that inspired the creation of the iPhone and was sold by Apple from October 2001 through May 2022. Tripp Mickle, *Farewell to the iPod*, N.Y. TIMES, May 10, 2022, *available at* https://www.ny-times.com/2022/05/10/technology/apple-ipod-phasing-out.html?login=email&auth=login-email).

[44] R. at 1313; Appellate Ex. XXXII at 26.

[45] Appellate Ex. XXXII at 26.

[46] R. at 301; 1007.

[47] R. at 301; 303.

[48] R. at 303.

[49] R. at 303.

[50] Appellate Ex. XXXII at 21; Pros. Ex. 7.

[51] Pros. Ex. 6.

[52] R. at 1262. A Faraday box is a device that prevents any data from being sent or received by electronic devices placed in the box.

*5. NCIS Waits More Than Three Months to Obtain a CASS.*

After seizing Appellant's property, the NCIS investigation stalled. On 29 May 2019, SA Kilo asked Appellant for permission to search the electronic devices NCIS had seized, and he refused to consent to their search.[53] Two days later, SA Kilo transferred and NCIS assigned the case to SA Mike, who returned from leave that day.[54]

On 24 June 2019—44 days into NCIS's investigation—SA Mike met with Ms. Hotel because she "wanted to know why [Ms. Hotel] had provided [Appellant's] devices to NCIS."[55] Specifically, SA Mike wanted to "determine if there was probable cause to actually have these devices or if they should be returned."[56] According to SA Mike, "I had a bunch of items that were delivered to NCIS, and I needed to put—figure out why."[57] Regarding the devices NCIS seized more than a month earlier, SA Mike testified, "I'm not going to seize anything or search anything that doesn't have probable cause."[58] And so, on 24 June 2019, SA Mike went "item by item and asked [Ms. Hotel], 'Well, why did you give us this particular device?'"[59]

Following her interview of Ms. Hotel, SA Mike's Case Activity Record reflects that NCIS sent her on temporary duty for a week from 15-19 July, and she followed that with several days of leave from 26 to 29 July.[60] She submitted a draft CASS to search and seize Appellant's electronic devices to the Convening Authority's (CA) Staff Judge Advocate (SJA) on 6 August 2019.[61] The CASS was signed on 13 August 2019—ninety-four days after seizure.[62]

---

[53] Appellate Ex. XL at 6.

[54] Appellate Ex. XLI at 2.

[55] R. at 260.

[56] R. at 260.

[57] R. at 262.

[58] R. at 260.

[59] R. at 261.

[60] Appellate Ex. XLI at 10.

[61] *Id.*

[62] Appellate Ex. XXXII at 25.

*6. NCIS's Forensic Examination of All Twenty-Six of Appellant's Electronic Devices Revealed Videos or Images of Ms. November on Appellant's iPhone Xs, iPhone 6s, and iPad 4.*

On 28 August 2019, fifteen more days after the issuance of the CASS, the NCIS digital forensic examiner began the examination of Appellant's electronic devices.[63] The sheer volume of media seized required NCIS's forensic examiner, Ms. Romeo, to work into the early part of the following year to complete her examination.[64] When her examination was complete, Ms. Romeo found a total of 124 videos within the Vivint mobile application (Vivint App) on Appellant's iPhone Xs, iPhone 6s, and iPad 4, all videos of which had been taken from the camera in Ms. November's bedroom.[65] The videos were triggered by a motion detector on the camera in Ms. November's room and lasted from fifteen to twenty seconds each.[66]

Appellant's iPhone Xs also contained six images. Four of the images were screenshots of a video taken as Ms. November changed clothes in her bedroom, which Ms. Romeo found in the iPhone Xs's Vivint App.[67] One of these images was the topless photograph that Ms. Hotel discovered in the deleted photos on Appellant's phone on 11 May 2019.[68]

Ms. Romeo also found two images of Ms. November sunbathing in a bikini on the beach in the Cloud Photo Library Assets (CPL Assets).[69] The images were taken with an iPhone 6s, and had been downloaded to the iPhone Xs from iCloud's shared folder for images.[70] The image was taken on 30 September 2018 and downloaded to Appellant's iPhone Xs on 11 December 2018.[71] Ms. Romeo also found thumbnails of the same picture on Appellant's iPhone 6s and iPad 4.[72]

---

[63] Appellate Ex. XCIII at 1; Appellate Ex. XLI at 6.

[64] R. at 1313.

[65] R. at 1307; Pros. Ex. 13.

[66] R. at 1330; 1489.

[67] R. at 1276-68; Pros. Ex. 8.

[68] Pros. Ex. 8.

[69] R. at 1277-78.

[70] R. at 1279.

[71] R. at 1280.

[72] R. at 1282-83.

In total, there were forty-eight videos within the Vivint App on Appellant's iPhone Xs. Eight captured nudity as Ms. November changed her clothes.[73] The videos were recorded from 6 May 2019 to 11 May 2019, the days immediately preceding Appellant's arrest by HPD.[74]

There were forty-three videos within the Vivint App on Appellant's iPhone 6s.[75] Two captured Ms. November briefly naked as she changed her clothes.[76] All of the videos were taken during the six-day-period from 5 December 2018 to 11 December 2018.[77]

Appellant's iPad 4 contained thirty-five videos within the Vivint App.[78] Thirteen of these captured Ms. November naked as she was changing her clothes.[79] One of these videos depicted one of Ms. November's friends, Ms. Papa, who was also a minor, briefly naked as she changed her clothes on 29 November 2018.[80] The videos on the iPad 4 were taken from 27 September 2018 to 29 December 2018.[81]

*7. NCIS's Forensic Examination of the Vivint Control Panel Revealed Eighteen Videos of Ms. November Changing her Clothes in Her Room from 8 to 11 May 2019.*

A forensic examination of the embedded multimedia card (eMMC) taken from the Vivint control panel, revealed 700 videos recorded by all five cameras in the home from the three-day period preceding Appellant's arrest.[82] The videos were triggered by motion detectors on the cameras, and lasted as long as twenty seconds.[83] Of these, eighteen videos (covering the period from 8 to 11 May 2019) captured Ms. November changing clothes in her bedroom.[84]

---

[73] R. at 1349.

[74] R. at 1348.

[75] R. at 1348.

[76] R. at 1348.

[77] R. at 1347.

[78] R. at 1345.

[79] R. at 1345.

[80] R. at 1305.

[81] R. at 1346.

[82] R. at 1484-86.

[83] R. at 1478.

[84] R. at 1483; Pros. Ex. 14.

*8. The Defense Moved to Suppress the Results of the Search of Appellant's iPhone Xs and the Seizure of his Other Apple Devices.*

Before trial, Appellant moved to suppress the results of the search of Appellant's iPhone Xs.[85] Specifically, Appellant argued that HPD Officer Tango's search of the iPhone Xs at his residence "infringed on his reasonable expectation of privacy in the contents of his iPhone."[86] Appellant went on to argue that Officer Tango "certainly could have seized the phone based on the representations made by [Ms. Hotel] at the scene and sought a warrant based on this and other information."[87] Separately, Appellant argued that the seizure of his other Apple devices was not supported by probable cause and violated the Fourth Amendment.[88]

The military judge denied the motion.[89] He concluded that the four screenshots that Officer Tango saw on Appellant's iPhone Xs shortly after arriving at the Harborth's home on 11 May 2019 were in plain view of law enforcement and therefore did not constitute a search in violation of the Fourth Amendment.[90] Although not raised by the Defense, the military judge also ruled that the seizure of Appellant's iPhone Xs was based on probable cause.[91] He further ruled that the seizure of Appellant's other Apple devices was supported by probable cause because they had "networking capabilities similar to the iPhone Xs[.]"[92]

The military judge declined to reach the Government's principal argument, renewed on appeal, that the seizure of all Appellant's Apple devices was authorized by Ms. Hotel's actual or apparent consent.[93]

---

[85] Appellate Ex. XXV.

[86] Appellate Ex. XXV at 11.

[87] Appellate Ex. XXV at 12.

[88] Appellate Ex. XXV at 12.

[89] Appellate Ex. LXIII.

[90] Appellate Ex. LXIII at 6.

[91] Appellate Ex. LXIII at 6.

[92] Appellate Ex. LXIII at 8.

[93] Appellate Ex. LXIII at 8. The military judge also ruled the challenged evidence in this case would have been inevitably discovered because law enforcement would have eventually obtained a search warrant to "seize all electronic devices at the accused's residence capable of receiving, storing, or transmitting nude images of [Ms. November]." Appellate Ex. LXIII at 9. The Government does not renew this argument

## II. DISCUSSION

This Court reviews a military judge's denial of a motion to suppress for an abuse of discretion.[94] But as the Supreme Court explained in *Ornelas v. United States*,[95] warrantless searches and seizures are reviewed *de novo*, in part, to incentivize law enforcement to avail themselves of the warrant process, where deference is given to a magistrate's probable-cause determination.[96]

The Fourth Amendment of the U.S. Constitution protects "the right of the people to be secure in the persons, houses, papers, and effects, against unreasonable searches and seizures."[97] Different interests are implicated by a seizure than by a search.[98] "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property."[99] Recognizing the generally less intrusive nature of a seizure, the Supreme Court has approved warrantless seizures of property, on the basis of

---

on appeal, and a party forfeits any argument not briefed on appeal, made in passing, or raised briefly without supporting arguments or authority. *Sapuppo v. Allstate Floridian Ins. Co.,* 739 F.3d 678, 681-82 (11th Cir. 2014). Moreover, the Government presented no evidence as to inevitable discovery at trial and mere speculation and conjecture is not sufficient when applying this exception. *United States v. Wicks*, 73 M.J. 93, 103 (C.A.A.F. 2014) (citation omitted).

[94] *United States v. Nieto*, 76 M.J. 101, 105 (C.A.A.F. 2017) (citing *United States v. Hoffmann*, 75 M.J. 120, 124 (C.A.A.F. 2016)).

[95] *Ornelas v. United States*, 517 U.S. 690, 698-99 (1996); *United States v. Cephas*, 254 F.3d 488, 491 (4th Cir. 2001) ("We review *de novo* the ultimate questions of reasonable suspicion and probable cause to make a warrantless search or seizure."); *United States v. Bell*, 500 F.3d 609, 612 (7th Cir. 2007) ("The propriety of warrantless searches is reviewed without deference.") (citing *Ornelas*, 517 U.S. at 699); *United States v. Flowers*, 336 F.3d 1222, 1225 (10th Cir. 2003) ("The ultimate determination of the reasonableness of a warrantless search or seizure under the Fourth Amendment is a determination of law reviewed *de novo*.") (citation omitted).

[96] *Ornelas*, 517 U.S. at 699.

[97] U.S. CONST. AMEND. IV.

[98] *Segura v. United States*, 468 U.S. 796, 806 (1984); *United States v. Eugene*, 78 M.J. 132, 134 (C.A.A.F. 2018) ("We are mindful that this Court has recognized that 'search' and 'seizure' are separate concepts.") (cleaned up).

[99] *Horton v. California*, 496 U.S. 128, 133 (1990).

probable cause, for the time necessary to secure a warrant, where a similar warrantless search would have been impermissible.[100]

There is no bright-line test for when the delay in seeking a warrant becomes unreasonable.[101] But the longer it takes police to seek a warrant, the greater the infringement on the person's possessory interests will be.[102] And in assessing the length of the detention, we take into account whether the police move diligently in pursuing their investigation.[103] "When police neglect to seek a warrant without any good explanation for that delay, it appears that the state is indifferent to searching the item and the intrusion on an individual's possessory interest is less likely to be justifiable."[104]

As then Judge Gorsuch wrote in *United States v. Christie*, "[w]hat, after all, is 'reasonable' about police seizing an individual's property on the ground that it potentially contains relevant evidence and then simply neglecting for months or years to search that property to determine whether it really does hold relevant evidence needed for trial or is totally irrelevant to the investigation and should be returned to its rightful owner?"[105]

Also important, although not dispositive, is whether a person whose property has been seized asserted a possessory claim to it or sought assurances that it would be returned.[106] Among other factors, courts have looked to whether a defendant availed himself of the local rules of criminal procedure to seek to have his property returned.[107] Of course, this factor carries less weight in the military justice system, which "does not have standing courts at the trial level to address legal issues at the pre-referral stage."[108]

---

[100] *Segura*, 468 U.S. at 806 (citing *Chambers v. Maroney*, 399 U.S. 42, 51-52 (1970); *United States v. Chadwick*, 433 U.S. 1, 12-14, n.8 (1977); *Arkansas v. Sanders*, 442 U.S. 753 (1979)).

[101] *United States v. Burgard*, 675 F.3d 1029, 1033 (7th Cir. 2012).

[102] *Id*.

[103] *United States v. Place*, 462 U.S. 696, 709 (1983).

[104] *Burgard*, 675 F.3d at 1033.

[105] *United States v. Christie*, 717 F.3d 1156, 1162 (10th Cir. 2013).

[106] *Burgard*, 675 F.3d at 1033.

[107] *United States v. Wilkins*, 538 F. Supp. 3d 49, 92 (D. D.C. 2021).

[108] *United States v. Wiechmann*, 67 M.J. 456, 461 (C.A.A.F. 2009).

By contrast, the Government's basis for the seizure, whether it is made on the basis of probable cause or only on reasonable suspicion, is often dispositive.[109] That is because the Fourth Amendment will tolerate greater delays after probable-cause seizures.[110]

As the Supreme Court made clear in *Riley v. California,*[111] the property seized in this case—two iPhones and an iPad known to belong to Appellant—raises "powerful Fourth Amendment concerns, both in the quality and quantity of private personal data it likely contains, and because lengthy seizure of an item of vital importance in daily life is likely to significantly interfere with a person's possessory interests."[112] Thus, courts have acknowledged that the search and seizure of digital media is distinct from searches and seizures that came before the advent of personal electronic storage and communication devices.[113] We agree.[114]

We now turn to Appellant's challenge to the Government's seizure of his iPhone Xs, iPhone 6s, and iPad 4.

### A. Appellant Waived his Argument Challenging the Seizure of his iPhone Xs.

Under Military Rule of Evidence (Mil. R. Evid.) 311(d)(2)(A), arguments for suppression of evidence under Mil. R. Evid. 311 that are not made at trial are waived.[115] And Mil. R. Evid. 311(d)(2)(A) "is not a rule that uses the term

---

[109] *Burgard*, 675 F. 3d at 1033.

[110] *Id.*

[111] *Riley v. California*, 573 U.S. 373, 401 (2014).

[112] *United States v. Bragg*, 44 F.4th 1067, 1073 (8th Cir. 2022); *United States v. Gardner*, 887 F.3d 780, 783 (6th Cir. 2018) ("We appreciate that cell phones have become singular instruments with singular importance to many people, maybe most people.").

[113] *See e.g., United States v. Smith*, 967 F.3d 198, 207 (2d Cir. 2020).

[114] We also disagree with the Government's argument, made at trial and at oral argument, that a modern smart phone is akin to a bag of golf clubs in a shared garage. R. at 391. Rather, "[s]earching a person's cell phone is like searching his home desk, computer, bank vault, and medicine cabinet all at once." *State v. Granville*, 423 S.W. 3d 399, 415 (Tex. Crim. App. 2014).

[115] *United States v. Perkins*, 78 M.J. 381, 390 (C.A.A.F. 2019).

'waiver' but actually means 'forfeiture.'"[116] When there is a waiver of an issue, that issue is extinguished and may not be raised on appeal.[117]

The Government argues that Appellant waived his challenge to the seizure of his electronic devices.[118] While we disagree with the Government with respect to twenty-five of his electronic devices, we agree with respect to Appellant's iPhone Xs.

Appellant's motion to suppress unambiguously challenged only the *search* of his iPhone Xs.[119] And if there was any confusion with respect to Appellant's written submission, the military judge erased any doubt in a colloquy with defense counsel:

> DC: And then there's a separate argument, which is the seizure of the other three Apple devices was itself unlawful, and that is a separate and distinct basis. So in other words, you could find that the [iPhone Xs] was good to go and—and still suppress the other things based on the lack—the illegal seizure.
>
> MJ: Understood. And then it's not a seizure of the [iPhone Xs] that you're claiming's unconstitutional. It's the search of that phone, correct?
>
> DC: That's right, Your Honor.[120]

In light of the record, and notwithstanding the position taken by Appellant at oral argument, we agree with the Government that Appellant waived any argument as to the seizure of his iPhone Xs.

## B. Even if Appellant's Challenge to the Seizure of his iPhone Xs was not Waived, there was Probable Cause for HPD and NCIS to Seize it.

"The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of

---

[116] *United States v. Robinson,* 77 M.J. 303, 307 (C.A.A.F. 2018).

[117] *United States v. Gladue,* 67 M.J. 311, 313 (C.A.A.F. 2009).

[118] Appellee's Br. at 20-22.

[119] Appellate Ex. XXV at 10.

[120] R. at 356.

the particular circumstances."[121] On review, probable cause must be supported by the objective facts known to the officer at the time of the search or seizure.[122] In the context of seizures, "in order for there to be probable cause, a sufficient nexus must be shown to exist between the alleged crime and the specific item to be seized."[123]

We need not spend much time discussing probable cause for the initial seizure of Appellant's iPhone Xs. When HPD officers were dispatched to the Harborth residence on 11 May 2019, they first met Appellant who announced, "It's bad, I need help. You should just arrest me now."[124] Soon thereafter, Ms. Hotel—a private party not then acting at the direction of HPD[125]—showed the officers Appellant's unlocked iPhone Xs, which contained contraband: a still image of Appellant's fifteen-year-old stepdaughter with her breasts exposed.

In light of these facts, we have no difficulty in concluding, as did the military judge,[126] that HPD had probable cause to seize Appellant's iPhone Xs.[127]

## C. Appellant Preserved his Challenge to the Seizure of his iPad4 and iPhone 6s.

We cannot agree with the Government that Appellant waived his challenge to the lawfulness of the seizure of his other electronic devices. Appellant challenged their seizure on the basis that law enforcement lacked probable cause, and the military judge addressed whether "the HPD and NCIS seizures of the accused's other Apple devices [were] supported by probable cause" in a written ruling.[128] And, as set forth fully below, we conclude that the military judge abused his discretion in ruling that they were.

---

[121] *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

[122] *Illinois v Rodriguez*, 497 U.S. 177, 188 (1990).

[123] *Nieto*, 76 M.J. at 106.

[124] R. at 1137.

[125] A search conducted by a private party not acting as an agent for law enforcement does not implicate the Fourth Amendment. *United States v. Jacobsen*, 466 U.S. 109, 115 (1984).

[126] Appellate Ex. LXIII at 7.

[127] The Defense argues that the military judge conflated Fourth Amendment privacy interests with possessory interests. Appellant's Br. at 29-30. But we attribute this to the fact that Appellant challenged both the *search* of his iPhone Xs and the *seizure* of his other electronic devices.

[128] Appellate Ex. LXIII at 7.

We also reject the Government's assertion that Appellant waived his argument as to the length of its warrantless seizure of Appellant's property. A "seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonable infringes interests protected by the Constitution."[129] And the "brevity" of a seizure is a factor routinely considered by courts in determining whether a seizure is reasonable under the Fourth Amendment.[130]

Appellant's challenge to the length of the unlawful seizure in this case "is simply an extension of his probable cause challenge, which he has pressed all along."[131] We do not require trial defense counsel to use "talismanic words" in making a particularized objection,[132] and Appellant's argument has always been that the Government's seizure of his electronic devices was illegal from start to finish.[133] Here, with the exception of the iPhone Xs, "[t]he police lacked probable cause to *seize* all electronic devices in the home in the first place."[134]

**D. HPD and NCIS lacked Probable Cause to Seize Twenty-Five other Electronic Devices Including Appellant's iPhone 6s and iPad 4.**

In *Nieto*, the Court of Appeals for the Armed Forces held that law enforcement lacked authority to "search and seize *all* of an accused's electronic devices and electronic media merely because the accused used a cell phone in furtherance of a crime."[135] Rather, law enforcement "must provide *specific and particular* information" that there is "a fair probability that contraband or evidence of a crime will be found in a particular place."[136]

In *Nieto*, law enforcement seized the accused's Samsung laptop after determining there was probable cause to believe he had committed a crime with his phone.[137] The *Nieto* Court held that the military judge abused his discretion in failing to suppress a search of the Samsung laptop because there was not a substantial basis to determine that probable cause existed to seize it in the

---

[129] *Rodriguez v. United States*, 575 U.S. 348, 360 (2015) (citation omitted)

[130] *United States v. Laist*, 702 F.3d 608, 613-14 (11th Cir. 2012).

[131] *United States v. Griffith*, 867 F.3d 1265, 1277 (D.C. Cir. 2017).

[132] *United States v. Blackburn*, 80 M.J. 205, 210 (C.A.A.F. 2020).

[133] R. at 369-70; 386; 395.

[134] *Griffith*, 867 F.3d at 1277 (emphasis in original).

[135] *Nieto*, 76 M.J. at 108 n.5 (emphasis in original).

[136] *Id*. (emphasis in original) (citation omitted).

[137] *Id*. at 105.

first place.[138] We have no difficulty in reaching the same conclusion with respect to the warrantless seizure of *all* of Appellant's electronic devices simply because there was probable cause to believe he had committed a crime with his iPhone Xs.[139]

Probable cause is not weighed in "terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."[140] While a law enforcement officer's professional experience may be useful in establishing the required nexus,[141] "probable cause is an objective inquiry based on the facts known to the officer at the time of the arrest."[142] Nevertheless, Officer Tango testified at trial that he did not take Appellant's iPhone 6s, iPad 4, and iPad 2 as he was arresting Appellant[143] because "there was no probable cause that the devices had content relevant to this particular case."[144]

This is consistent with SA Mike's testimony that she subjectively did not believe that she had probable cause to seize all of Appellant's electronic devices until she interviewed Ms. Hotel forty-four days after Appellant's arrest.[145] In conducting our objective analysis, we agree with the assessments of these experienced law enforcement officers that, aside from Appellant's iPhone Xs, the Government lacked probable cause to seize all of Appellant's electronic devices merely because there was probable cause to believe he had committed a crime with his iPhone Xs.

Simply put, the Fourth Amendment does not generally permit law enforcement to employ a "ready, shoot, aim" approach to searches and seizures. The military judge abused his discretion when he concluded that evidence of a

---

[138] *Id*. at 108.

[139] *See also United States v. Harvey*, 2022 U.S. Dist. LEXIS 40979, at \*23 (E.D.N.Y. 2022) ("The Court is mystified as to why there would be probable cause to seize *all* electronic devices, including those that could not connect to social media accounts—such as, presumably, the flip phone that was eventually recovered from Harvey's apartment."); *Griffith*, 867 F.3d at 1277.

[140] *Illinois v. Gates*, 462 U.S. 213, 232 (1983) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

[141] *Nieto*, 76 M.J. at 106.

[142] *Robles v. Ciarletta*, 797 Fed. Appx. 821, 830-31 (5th Cir. 2019).

[143] The military judge's finding that HPD seized all of Appellant's Apple devices on 11 May 2019 is clearly erroneous. Appellate Ex. LXIII. But we agree with the Government that this apparent scrivener's error was of no consequence. Appellee's Br. at 28.

[144] R. at 1151.

[145] R. at 260.

crime on Appellant's iPhone Xs "may or may not be determinative of whether further images or evidence would have ultimately been discovered on the other electronic devices,"[146] but then denied the Defense's motion to suppress.[147] "Speculation does not equate to probable cause."[148] And absent anything more than speculation, law enforcement lacked probable cause to seize Appellant's other electronic devices.

It was also an abuse of discretion for the military judge to conclude that there was probable cause to seize of all of Appellant's Apple devices because they had "networking capabilities similar to the iPhone Xs that already contained at least one topless photo"[149] of Ms. November. There is no evidence before the Court that the networking capabilities of Appellant's iPhone 6s and iPad 4 were known to law enforcement at the time of their seizure.[150] Indeed, Appellant's iPhone 6s had been, for all practical purposes, destroyed when Appellant closed the door of his truck on it.[151]

It wasn't until the forensic search of Appellant's devices that NCIS learned Appellant had used the Vivint App to secretly record Ms. November; that he had installed the Vivint App on just three of his Apple devices; and, that the Vivint App on those three devices contained videos of Ms. November changing clothes in her room from three different, relevant time periods. And law enforcement "cannot manufacture probable cause or an exception to the warrant requirement based on facts that are discovered *during* or *after* a search."[152]

Under the circumstances known at the time, it was unreasonable for law enforcement to seize all of Appellant's Apple devices simply because there were four incriminating screenshots on his iPhone Xs.

---

[146] Appellate Ex. LXIII at 8.

[147] *See United States v. Babcock*, 924 F.3d 1180, 1192 (11th Cir. 2019) ("Probable cause to seize property is what it sounds like—a belief that evidence will *probably* be found in a particular place.") (emphasis in original).

[148] *United States v. McClain*, 444 F.3d 556, 563 (6th Cir. 2005).

[149] Appellate Ex. LXIII at 8.

[150] *See United States v. Estrella*, 69 F.4th 958, 969 (9th Cir. 2023) (holding the predicate circumstances justifying a challenged seizure must be known to the police at the time of the challenged encounter).

[151] Appellate Ex. XXXII at 21; R. at 287-88.

[152] *Estrella*, 69 F.4th at 969 (emphasis in original) (citation omitted).

Because the law enforcement officers rightly disclaimed probable cause, and the military judge could only speculate[153] as to what may have been on Appellant's other electronic devices at the time they were seized, this Court ordinarily applies the exclusionary rule.[154]

**E. Ms. Hotel did not Have Actual or Apparent Authority to Consent to the Seizure of Appellant's Digital Devices.**

The Government argues that probable cause is "irrelevant" because Ms. Hotel had both actual and apparent authority to consent to law enforcement's seizure of Appellant's electronic devices.[155] But this argument fares no better.

Although the Government is correct that this issue is preserved for appeal because it was raised below,[156] the military judge's declination to reach this issue after he determined it to be moot requires the Court to address it *de novo*.[157]

Consent is a well settled exception to the requirement to obtain a warrant before seizing property, but it must be obtained from a party with a possessory interest in the property.[158] "The rationale for third-party consent searches resting, as it does, upon the diminished expectation of privacy attending a third party's common authority over the premises or effects to be searched, does not provide a sufficient basis for a third party's consent to the seizure of another's personal effects."[159]

The doctrine of third party consent almost always arises in the context of searches, like in this Court's recent decision in *United States v. Taylor*, which

---

[153] We note that the military judge's inquiry was hobbled by the Government's decision to belatedly call only a single witness in response to the Defense's motion to suppress, and she could offer no relevant testimony on the seizure at issue in this case. (R. at 198; 216.) We also acknowledge that appellate courts benefit from the hindsight that a complete record provides. *See In re Toyota Motor, U.S.A., Inc.*, 407 S.W. 3d 746, 761 (Tex. 2013).

[154] *Nieto*, 76 M.J. at 106 (citation omitted).

[155] Appellee's Br. at 24-25.

[156] *See United States v. Perkins*, 78 M.J. 381, 386 n.8 (C.A.A.F. 2019).

[157] *See United States v. Flesher*, 73 M.J. 303, 312 (C.A.A.F. 2014); *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000).

[158] Mil. R. Evid. 316(c)(3); *United States v. Sukhtipyaroge*, 2018 U.S. Dist. LEXIS 60632, *6 (D. Minn. 2018) (citing *United States v. Jacobson*, 466 U.S. 109, 113 (1984) and *United States v. Matlock*, 415 U.S. 164, 171 (1974)).

[159] *State v. Lacey*, 349 Mont. 371, 389 (Mont. 2009).

resolved an interlocutory appeal by the Government pursuant to Article 62, UCMJ.[160] But as in *Taylor*, we hold that Ms. Hotel had neither actual nor apparent authority to consent to the seizure of Appellant's electronic devices. Unlike in *Taylor*, there is no conflicting evidence regarding who owned *all* of the devices at issue in this case.[161] And unlike in *Taylor*, there is no evidence that Ms. Hotel was a joint user of *any* of Appellant's devices.[162] Indeed, the military judge found that Ms. Hotel was unable to unlock any of Appellant's devices except for his iPhone Xs,[163] and we will not disturb the military judge's findings of fact unless clearly erroneous.[164]

Although the Government elected to present no evidence as to Ms. Hotel's access to Appellant's other devices during litigation of Appellant's motion to suppress, on appeal the Government cites other portions of the record to argue Ms. Hotel "had the password to access the devices."[165] This apparently references Ms. Hotel's successful effort to guess the passcodes for some of Appellant's other Apple devices the night after his arrest,[166] which were all some variation of "112277"[167] or "1122."[168]

But it should not need to be said that individuals who steal or guess passwords or otherwise force their way into computers without the consent of an authorized user are not persons who are given the right of access by those who possess that right.[169] More importantly, the fact that Ms. Hotel guessed the passcode speaks primarily to her authority to consent to a *search* of the phone,

---

[160] *United States v. Taylor*, 2020 CCA LEXIS 137 (N-M. Ct. Crim. App. 2020).

[161] *Taylor*, 2020 CCA LEXIS 137, at *26 ("Although the electronics were undeniably in Ms. Yankee's *possession* when she turned them over to NCIS, the analysis must focus on whether she was a rightful owner.").

[162] *Id.* at *31; *United States v. Rader*, 65 M.J. 30, 34 (C.A.A.F. 2007) (holding third party could validly consent to search of shared computer that was not password protected).

[163] Appellate Ex. LXIII at 5.

[164] *Rader*, 65 M.J. at 33.

[165] Appellee's Br. at 25.

[166] R. at 394; 1101.

[167] Appellate Ex. XII at 37.

[168] Appellate Ex. XII at 40 ("Passcode provided as '112277'…unlocked the device successfully with passcode '1122.'").

[169] *See generally United States v. Grijalva*, 83 M.J. 669, 672 (C.G. Ct. Crim. App. 2023).

not her authority to consent to its *seizure*.[170] Even assuming Appellant had given Ms. Hotel unfettered access to the contents of his devices, she had no right to deprive him of possession of his property by authorizing their seizure.[171]

Unable to distinguish our decision in *Taylor*, the Government advances[172] two cases it did not raise in briefs in that case, *United States v. Stabile*[173] and *United States v. Clutter*.[174]

In *Clutter*, the Eighth Circuit held that the defendant's possessory interest in his computers was not implicated because he was incarcerated, their seizure was based on probable cause; the seizure was temporary before law enforcement obtained a warrant; and, the defendant's father owned the home and common areas where they were found and was in "actual possession" of them when he consented to their seizure.[175]

We question the court's holding that a person in custody automatically forfeits a possessory interest in everything that does not remain on his body while in jail. "To find that a person's possessory interest in his phone diminishes beyond constitutional protection the moment he is incarcerated would be like saying a person also suddenly lacks a cognizable possessory interest in his journal, his mail, or his bank account once he is incarcerated."[176]

Regardless, *Clutter* is unpersuasive where Appellant was only briefly detained and the Government has never argued, unlike in *Clutter*, that its brief, warrantless seizure was justified by exigent circumstances.[177] Indeed, if third party consent most commonly arises in the context of searches, exigent circumstances is almost universally asserted in cases involving the seizure of electronic devices.[178] But not here. Not once.

---

[170] *In re J.F.S.*, 300 A.3d 748, 757 (D.C. App. 2023).

[171] *Id.* at 756.

[172] Appellee's Br. at 24-25.

[173] 633 F.3d 219 (3d Cir. 2011).

[174] 674 F.3d 980 (8th Cir. 2012).

[175] *Clutter*, 674. F.3d at 985.

[176] *United States v. Grills*, 2019 U.S. Dist. LEXIS 188105, at *25 (E.D. Wis. 2019).

[177] *Clutter*, 674 F.3d at 984-85.

[178] *See, e.g., United States v. Shrum*, 59 F.4th 968, 972-73 (8th Cir. 2023) (exigent circumstances justified seizure of phone pending issuance of warrant); *Andersen v.*

The Third Circuit's decision in *Stabile*, which involved the seizure of hard drives that were not password protected, is equally inapplicable to a case involving devices that were password protected.[179] Using the court's terminology in *Stabile*, we conclude that a password-protected phone is more akin to a locked footlocker under the bed than it is a shared duffel bag.[180]

Further, the hard drives in *Stabile* were found in common areas of a marital home, "such as on the main floor and in the basement, rather than in a private bedroom."[181] Here, the Government concedes we do not know where in the home Ms. Hotel found the twenty-five "footlockers" at issue because the Government elected to defend the motion to suppress by not calling any witnesses involved in the seizure of Appellant's electronic devices.[182]

With respect to apparent consent, no reasonable officer could believe that Ms. Hotel had authority over Appellant's digital devices based on the facts available at the time of their seizure. Unlike in *Taylor*, the HPD officers and NCIS agents were not confronted with evidence that Appellant had abandoned his property or that the devices were shared by Appellant and his wife.[183] Everyone involved knew the devices belonged exclusively to Appellant. And everyone knew they were password protected and that Ms. Hotel could not access them.

---

*Delcore*, 79 F.4th 1153, 1166 (10th Cir. 2023) (stating warrantless seizure of phones is permitted where there is probable cause to believe that it contains evidence of a crime and exigent circumstances exist). The rationale underlying the exigent circumstances exception is a "compelling need for official action and no time to secure a warrant." *Missouri v. McNeely*, 569 U.S. 141, 149 (2013) (citation omitted). But mere supposition does not establish the existence of exigent circumstances to justify the warrantless seizure of a phone. *United States v. Lazzaro*, 2022 U.S. Dist. LEXIS 139919, at \*16 (D. Minn. 2022). Nor may police "seize now-ubiquitous cell phones from any person, in any place, at any time, so long as the phone contains photographs or videos that could serve as evidence of a crime—simply because the 'nature' of the device used to capture that evidence *might* result in it being lost." *Crocker v. Beatty*, 886 F.3d 1132, 1137 (11th Cir. 2018).

[179] *Stabile*, 633 F.3d at 233; R. at 258.

[180] *Stabile*, 633 F.3d at 232.

[181] *Id.* at 233.

[182] R. at 198; 253.

[183] *Taylor*, 2020 CCA LEXIS 137, at \*44-45.

There is *nothing* in the record before us that would lead an "unknowing observer"[184] to conclude that Appellant's electronic devices belonged to Ms. Hotel.[185] Indeed, Ms. Hotel testified at trial that HPD officers directed her to go into the house and look for evidence, and *that* was why she collected Appellant's digital devices.[186] Merely holding property known to belong to someone cannot serve as a basis for apparent consent.[187] Thus, as in *Taylor*, we are confronted with "post-hoc rationalization—after the benefit of consultation with counsel—to justify actions that took place earlier in time."[188]

Finally, we also consider animosity between the parties in assessing whether a seizure is justified by apparent consent.[189] Here, HPD officers were dispatched to the Harborth's home on 11 May 2019 for an "argument call, possible weapons."[190] And when they arrived, they learned that Appellant had been locked out of the house and had been assaulted by Ms. Hotel. Under the totality of the circumstances, no reasonable officer could have concluded that Ms. Hotel had authority to consent to the seizure of Appellant's password-protected, personal property.

**F. NCIS's Delay in Seeking a CASS to seize and to search Appellant's iPhone 6s and iPad 4 was Unreasonable Under the Fourth Amendment.**

Although we rest our decision regarding the warrantless seizures in this case on both lack of probable cause and lack of valid consent, we also hold that

---

[184] *United States v. Perry*, 2019 U.S. Dist. LEXIS 163218, at *14 (E.D. Va. 2019).

[185] *Compare United States v. Gardner*, 818 F.3d 780, 784 (6th Cir. 2018) (finding apparent consent where minor used phone with undercover police officer, had only that phone in her possession, knew the passcode, and gave it to officers) *with Trulock v. Freeh*, 275 F.3d 391, 403 (4th Cir. 2001) (finding no apparent consent in password protected files, which were like a "locked footlocker").

[186] R. at 1094. Although the military judge determined the issue of third-party consent to be moot in light of his ruling, and therefore did have the opportunity to fully address the relevant facts, in light of the entire record, the military judge's finding of fact that HPD officers did not ask for Appellant's devices, and that Ms. Hotel provided them of her own volition, is clearly erroneous.

[187] *Commonwealth v. Silo*, 480 Pa. 15, 19 (Pa. 1978).

[188] *Taylor*, 2020 CCA LEXIS 137, at *43.

[189] *Id.* at *45.

[190] R. at 1136.

the ninety-four-day delay in obtaining a warrant to seize and search Appellant's electronic devices was constitutionally unreasonable.[191]

The Fourth Amendment does not become irrelevant once an initial seizure has run its course.[192] A seizure is justified under the Fourth Amendment only to the extent that the Government's justification holds force.[193] Thereafter, the Government must cease the seizure or secure a new justification.[194] "The longer the police take to seek a warrant, the greater the infringement on the person's possessory interest will be, for the obvious reason that a longer seizure is a greater infringement on possession than a shorter one."[195]

Delays in obtaining a warrant far shorter than the ninety-four days in this case have been found to be unconstitutionally long.[196] Other federal courts of appeal have looked to four relevant factors in determining whether the police have waited an unreasonable period of time before seeking a search warrant: (1) the length of the delay, (2) the importance of the seized property to the defendant, (3) whether the defendant had a reduced property interest in the item, (4) the strength of the Government's justification for the delay.[197]

The strongest argument the Government can make regarding Appellant's diminished possessory interest in his iPhone 6s and iPad 4 is that he did not, at any point during the ninety-four-day seizure, specifically request the return of his property from either HPD or NCIS.[198] He did, however, refuse the NCIS agent's request to search his electronic devices on 29 May 2019—or eighteen

---

[191] *See, e.g., United States v. Hae Yeong Song*, 2023 U.S. App. LEXIS 19843, at *9 (5th Cir. 2023) (holding three-day delay in obtaining CASS to seize Army soldier's phone reasonable where law enforcement attempted to obtain CASS before seizure and was delayed by more pressing emergency).

[192] *Brewster v. Beck*, 859 F.3d 1194, 1196 (9th Cir. 2017).

[193] *Id.* at 1197.

[194] *Id.*

[195] *Burgard*, 675 F.3d at 1033.

[196] *See, e.g., United States v. Pratt*, 915 F.3d 266, 272 (4th Cir. 2019) (finding 31-day delay in obtaining a warrant following seizure of cell phone unreasonable); *United States v. Mitchell*, 565 F.3d 1347, 1351-52 (11th Cir. 2009) (21-day delay in obtaining a warrant following seizure of cell phone unreasonable); *United States v. Smith*, 967 F. 3d 198, 207 (4th Cir. 2020) (holding month-long delay "well exceeds what is ordinarily reasonable.").

[197] *Smith*, 967 F.3d at 206; *Pratt*, 915 F.3d at 271; *United States v. Sullivan*, 797 F.3d 623, 633-34 (9th Cir. 2015); *Laist*, 702 F.3d at 613-14; *Stabile*, 633 F.3d at 235.

[198] Appellee's Br. at 34.

days into the unlawful seizure—which we consider as some evidence that Appellant asserted both his privacy and possessory interests in his property.[199]

Next, Appellant's possessory interest in his iPhone 6s and iPad 4, minicomputers,[200] used to store e-mails, financial information, passwords, family photos, and countless other items of a personal nature,[201] was strong.[202] Accordingly, a person's "possessory interest in his cell phone is at least as high as—if not higher than—his interest" in other containers such as luggage.[203] Indeed, given the "ubiquity of cell phones—and our increasing reliance on them—it's no stretch to hazard that a modern-day traveler would likely rather arrive in a strange place without her luggage than without her phone."[204]

Finally, we must weigh these factors against NCIS's lack of diligence in pursuing a CASS. SA Mike's detailed Case Activity Record reflects that NCIS spent the summer of 2019 conducting some investigatory activity, such as submitting a preservation letter to Google, twice consulting with the Department of Defense Cyber Crime Center, and interviewing Ms. Hotel on 24 June.[205] But there was no activity in Appellant's case whatsoever from 8 July 2019, when SA Mike updated Ms. Hotel, to 1 August 2019, after SA Mike returned from temporary duty and leave.[206]

In *Mitchell*, the Eleventh Circuit rejected an argument that an FBI agent's two-week training course justified a twenty-one-day delay in seeking a warrant.[207] We have little difficulty in reaching the same conclusion in this case where the period of inactivity is even longer—twenty-four days—and the CASS was not issued until ninety-four days after Appellant's property was seized. And as in *Mitchell*, SA Mike's belated, nine-page affidavit contained only five pages of double-spaced original content.[208] The Fourth Amendment imposes a time-sensitive duty to diligently apply for a search warrant if property has

---

[199] Appellate Ex. XL at 6.

[200] *Riley*, 573 U.S. at 393.

[201] Ms. Romeo testified the phone held more than 10,000 pictures. R. at 1341.

[202] *Mitchell*, 565 F.3d at 1351.

[203] *Babcock*, 924 F.3d at 1192.

[204] *Id.* at 1191.

[205] Appellate Ex. XLI at 10-11.

[206] Appellate Ex. XLI at 10-11.

[207] *Mitchell*, 565 F.3d at 1352. Other courts have reached the same conclusion with respective to heavy caseloads. *See, e.g., Smith*, 967 F.3d at 210.

[208] *Mitchell*, 565 F.3d at 1351.

been seized, "and all the more so if the item has been warrantlessly seized."[209] "After seizing an item without a warrant, an officer must make it a priority to secure a search warrant that complies with the Fourth Amendment."[210]

Importantly, while we conclude NCIS had probable cause to seize Appellant's iPhone Xs, the seizure of the remainder of Appellant's digital devices was made—at best—pursuant to a reasonable suspicion that they were involved in criminal activity. And the constitutionally permissible duration of investigatory *Terry*[211] stops of property, most commonly luggage, is measured in minutes and hours.[212] In *United States v. Babcock,* the Eleventh Circuit concluded that a two-day, *Terry*-stop seizure of a phone over the weekend, without attempting to secure a warrant, fell "well outside the realm of a permissible *Terry* stop."[213] In this case, SA Mike didn't even begin her inquiry as to why NCIS had the entirety of Appellant's digital devices until forty-four days into NCIS's *Terry* stop,[214] and we conclude the *Terry* stop ripened into an unconstitutional seizure well before then.[215]

In assessing the reasonableness of delay in seeking a warrant, we remain mindful to consider the totality of the circumstances in each case, and to avoid "rigid rules, bright-line tests, and mechanistic inquiries."[216] And we need not do so here with respect to the amount of delay that is permissible before law enforcement must seek a warrant to seize or search a modern smartphone. We hold only that the totality of the circumstances in this case do not justify the warrantless seizure of Appellant's property for ninety-four days.

---

[209] *Smith,* 967 F.3d at 210.

[210] *Burgard,* 675 F.3d at 1035.

[211] *Terry v. Ohio,* 392 U.S. 1 (1968).

[212] *See, e.g., United States v. $557,933.89, More or Less, in U.S. Funds,* 287 F.3d 66, 86 n. 16 (2d Cir. 2002); *United States v. Lawing,* 703 F.3d 229, 238 (4th Cir. 2012).

[213] *Babcock,* 924 F.3d. at 1192.

[214] R. at 260.

[215] *See Place,* 462 U.S. at 702.

[216] *Florida v. Harris,* 568 U.S. 237, 244 (2013).

**G. Suppression is Warranted Under the Exclusionary Rule as Codified in Military Rule of Evidence 311(a).**

"The exclusionary rule provides that evidence seized in violation of the Fourth Amendment is ordinarily remedied by suppression."[217] But the exclusionary rule is not a constitutional rule.[218] Instead, it is a prudential doctrine designed to "compel respect for the constitutional guarantee."[219] "The rule's sole purpose. . . is to deter future Fourth Amendment violations."[220] In the military context, the President has codified the exclusionary rule in Mil. R. Evid. 311(a).[221]

Neither the Government nor the military judge addressed Mil. R. Evid. 311(a)(3) below, and so we must determine *de novo*[222] whether the Government has met its burden of demonstrating that the deterrence of future unlawful searches or seizures is not appreciable or such deterrence does not outweigh the costs to the justice system.[223]

"This case does not involve complex and cutting-edge search techniques for smartphones or computers, nor does it involve search and seizure issues unique to the military and its mission."[224] Indeed, the pleadings in this case and the Court's opinion are replete with cases requiring law enforcement to justify a warrantless seizure of a smart phone and then move with deliberate haste in seeking a warrant. Despite this precedent, law enforcement directed Appellant's wife to gather a box of evidence that included multiple smart phones, and then did not obtain a CASS for ninety-four days.[225]

Worse than a "blatantly unconstitutional fishing expedition by law enforcement,"[226] the seizure of twenty-five of Appellant's electronic devices—even his

---

[217] *United States v. Pimentel*, 26 F.4th 86, 90 (1st Cir. 2022).

[218] *Davis v. United States*, 564 U.S. 229, 236 (2011).

[219] *Id.*

[220] *Id.* at 236-37.

[221] *United States v. Lattin*, 83 M.J. 192, 197 (C.A.A.F. 2023).

[222] *See Manns*, 54 M.J. at 166; *Flesher*, 73 M.J. at 312.

[223] Mil. R. Evid. 311(d)(5)(A).

[224] *Lattin*, 83 M.J. at 199 (Ohlson, C.J., dissenting).

[225] R. at 1094.

[226] *Lattin*, 83 M.J. at 199 (Ohlson, C.J., dissenting).

iPod—is the type of dragnet seizure[227] the Fourth Amendment was designed to prevent.[228] Notably, the dragnet seizure in this case occurred two years *after* the Court of Appeals for the Armed Forces condemned the practice of seizing all of a suspect's electronic devices because he was suspected of committing a crime with his smart phone.[229] Here, the Government cannot meet its burden of demonstrating law enforcement was not "sufficiently culpable" to warrant invocation of the exclusionary rule.[230]

We acknowledge our decision imposes some costs to the justice system in that it will result in the dismissal of Specification 3 of Charge I and the authorization of a rehearing on two other specifications. But, as set forth fully below, we affirm the gravamen of the offenses, the indecent visual recording of Ms. November, because we are convinced beyond a reasonable doubt that Appellant's conviction for Specification 2 of Charge I is supported by lawfully obtained evidence, such as the Vivint control panel.

We conclude that the benefits of deterrence from exclusion outweigh the costs to the justice system under the balancing test in Mil. R. Evid. 311(a)(3). Three years after our decision in *Taylor* we are again confronted with a case where NCIS "agents apparently took no action for months, potentially because they knew they lacked probable cause. . ."[231] Faced with "recurring or systemic negligence,"[232] we are compelled to again stress that "[t]he bulwark of Fourth Amendment protection, of course, is the Warrant Clause, requiring that, absent certain exceptions, police obtain a warrant from a neutral and disinterested magistrate before" embarking on a seizure.[233]

---

[227] *Verdun v. City of San Deigo*, 51 F.4th 1033, 1041 (9th Cir. 2022) ("A dragnet is a search or seizure of every person, place, or thing in a specific location or involved in a specific activity.") (cleaned up).

[228] *Umanzor v. United States*, 803 A.2d 983, 998 (D.C. Ct. App. 2002).

[229] *Nieto*, 76 M.J. at 108 n.5.

[230] *Herring v. United States*, 555 U.S. 135, 144 (2009).

[231] *Taylor*, 2020 CCA LEXIS 137, at *48.

[232] *Herring*, 555 U.S. at 144.

[233] *Franks v. Delaware*, 438 U.S. 154, 164 (1978).

**H. The Erroneous Admission of Evidence Obtained in Violation of Appellant's Fourth Amendment Rights is Harmless Beyond a Reasonable Doubt with Respect to the Indecent Visual Recording of Ms. November in 2019.**

Finally, we must determine whether the Government has sustained its burden of demonstrating that the Fourth Amendment violation in this case was harmless beyond a reasonable doubt.[234] The Government must demonstrate that there was "no reasonable possibility" that the erroneous admission of the results of the seizure and search of Appellant's electronic devices "contributed to the contested findings of guilty."[235] An error has not contributed to the verdict when it was "unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record."[236]

We hold that the Government has met its burden with respect to Specification 2 of Charge I. Even without Appellant's iPhone Xs, the evidence that Appellant knowingly and wrongfully recorded his stepdaughter in her bedroom in 2019 is overwhelming. First, when HPD officers arrived at Appellant's home on 11 May 2019, Appellant told them, "It's bad, I need help. You should just arrest me now."[237] And as they attempted to sort out the domestic dispute, Ms. Hotel invited the officers into her home brandishing Appellant's iPhone Xs, and she showed the officers four screenshots of videos taken from a security camera installed in Ms. November's bedroom.[238] Those images were contraband in plain view of law enforcement and properly admitted at Appellant's court-martial.

And if that were not enough, Ms. Hotel testified at trial that Appellant told both her and Ms. November that the camera was inoperable.[239] She also testified that when Ms. November would unplug the supposedly broken camera, Appellant would plug it back in saying the Vivint App pinged his phone when

---

[234] *United States v. Simmons*, 59 M.J. 485, 489 (C.A.A.F. 2004).

[235] *United States v. Collier*, 67 M.J. 347, 355 (C.A.A.F. 2009).

[236] *United States v. Othuru*, 65 M.J. 375, 377 (C.A.A.F. 2007).

[237] R. at 1137.

[238] Pros. Ex. 2.

[239] R. at 1005.

it was offline.[240] Ms. November added that Appellant would get mad when she would unplug the camera, and that this happened "pretty frequently."[241]

And if that *still* were not enough, as Appellant was struggling to get his iPhone Xs from his wife and stepdaughter in their garage, he told them, in response to a question from his wife, he had thought about masturbating to the screenshots of his stepdaughter.[242]

While there is no audio, that moment was recorded by the Vivint camera in the Harborth's garage, and it captures Ms. Hotel again striking her husband in response to his statement and Ms. November's shocked dismay, her mouth agape.[243]

When we also consider the eighteen videos taken from the Vivint control panel, whose admissibility Appellant does not challenge on appeal, we are convinced beyond a reasonable doubt that the unlawful seizure of Appellant's electronic devices did not contribute to his conviction for Specification 2 of Charge I.[244]

---

[240] R. at 1006.

[241] R. at 883-84.

[242] R. at 901.

[243] R. at 901-02; Pros. Ex. 3.

[244] In light of this result, we decline to reach Appellant's assertion that he received ineffective assistance of counsel at trial when his counsel failed to challenge the seizure of his iPhone Xs. (App. Br. at 52-53). Although we acknowledge that the tests for determining constitutional harmless error and for determining prejudice under an ineffective assistance analysis are substantially different, this case presents an occasion where the overwhelming evidence of guilt presents insurmountable obstacle to Appellant claiming prejudice from his alleged ineffective assistance of counsel claim. *United States v. Kreutzer*, 61 M.J. 293, 300 (C.A.A.F. 2005). Even though Appellant has convinced the Court that there is a reasonable probability that a motion to suppress the results of the seizure and search of his iPhone Xs would have been meritorious, there is not a reasonable probability of a different verdict absent the excludable evidence. *United States v. Harpole*, 77 M.J. 231, 236 (C.A.A.F. 2018). Moreover, abandoning weaker arguments to develop those more likely to succeed is a "tactical gambit," *United States v. Jameson*, 65 M.J. 160, 165 (C.A.A.F. 2007) (Baker, J., concurring), not deficient performance. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

**I. The Erroneous Admission of Evidence Obtained in Violation of Appellant's Fourth Amendment Rights is Not Harmless Beyond a Reasonable for the Remaining Charges and Specifications.**

*1. The Government Concedes it Cannot Meet its Burden of Establishing Harmlessness Beyond a Reasonable Doubt with Respect to the Indecent Recording of Ms. Papa.*

With respect to Specification 3 of Charge I, which involved the indecent recording of Ms. Papa, a minor who was one of Ms. November's friends and changed clothes in Ms. November's bedroom, the Government concedes it cannot meet its burden because the only evidence to support that offense was obtained through the unlawful seizure of Appellant's iPad 4. Accordingly, we will direct that Specification 3 be dismissed in our decretal paragraph.

But while the harmlessness analysis of Specifications 2 and 3 of Charge I are relatively straightforward, the same cannot be said for the remaining offenses.

*2. The Government Cannot Meet its Burden of Establishing Harmlessness Beyond a Reasonable Doubt with Respect to the Indecent Recording of Ms. November from May to December 2018.*

Specification 1 of Charge I alleges Appellant wrongfully recorded Ms. November from on or about May 2018 to on or about 31 December 2018. The primary evidence to support this charge are the seventy-eight videos found on Appellant's iPad 4 and iPhone 6s, which we conclude are subject to the exclusionary rule in Mil. R. Evid. 311(a)(3).

The NCIS digital forensic examiner testified that the videos on Appellant's iPhone 6s were created between 5-11 December 2018, and the videos on his iPad 4 were created between 6 October and 29 December 2018.[245] Under the circumstances, the Government cannot meet its burden to demonstrate that the erroneous admission of videos from Appellant's iPad 4 and iPhone 6s, all created in December 2018, did not contribute to his conviction for the indecent recording of Ms. November from on or about May to December 2018.

The Government argues that the four screenshots found on Appellant's iPhone Xs support his conviction for Specification 1 of Charge I.[246] But the NCIS digital forensic examiner testified these were created on 1 May 2019.[247] The

---

[245] R. at 1301; 1346-47; Pros. Ex. 21.

[246] Appellee's Br. at 45.

[247] R. at 1274.

same is true for the eighteen videos that NCIS obtained from the Vivint control panel, which were all recorded in the three days preceding Appellant's arrest in May 2019.[248]

Finally, the Government argued in closing that Appellant should be convicted of Specification 1 of Charge I in light of "126 clips across those three devices."[249] The Government cannot meet its burden of establishing harmlessness where two of the three devices referenced by trial counsel should have been suppressed, and where these devices include all of the videos recorded during the charged period in 2018.

*3. The Government Cannot Meet its Burden of Establishing Harmlessness Beyond a Reasonable Doubt with Respect to Production of Child Pornography of Ms. November from August 2016 to December 2018.*

The Government argues that Specification 3 of Charge II alleges Appellant produced child pornography by recording Ms. November masturbating in her room.[250] But Specification 3 of Charge II alleges only that Appellant produced child pornography by recording a minor engaging in sexually explicit conduct. This distinction is important in light of the Government's argument to the members that eleven of the videos depicting Ms. November changing her clothes constitute child pornography.[251] The only evidence to support the Government's characterization of the charged offense on appeal is the testimony of Ms. Hotel, who testified she downloaded twenty or more emails to Appellant's iPad 4 after Appellant's arrest on 11 May 2019, and all of the emails contained videos of Ms. November masturbating in front of her bedroom mirror.[252]

The Government argues that Ms. Hotel's testimony alone can meet its burden of demonstrating the erroneous admission did not contribute to the findings of guilt.[253] Ms. November also testified, apparently for the first time at trial,[254] that she masturbated in front of her mirror below the camera in her

---

[248] R. at 1485-86.

[249] R. at 1613.

[250] Appellee's Br. at 45; 68-69.

[251] R. at 1625.

[252] R. at 1027; 1036; 1038.

[253] Appellee's Br. at 45-46.

[254] R. at 959-60; 963-65.

room.[255] Nevertheless, we are not convinced that the Government has met its burden.

As the Defense points out in a separate assignment of error challenging the factual sufficiency of Specification 3 of Charge II, the videos captured in Ms. November's bedroom do not corroborate Ms. Hotel's testimony that she was able to see her daughter masturbating through the reflection in her bedroom mirror.[256] Having reviewed all of the videos in this case, the Defense's argument has some merit—regardless of the positioning of the sliding glass mirror.

More importantly, the NCIS digital forensic examination of Appellant's iPad 4 found no videos of Ms. November doing anything but changing her clothes in her room.[257] It did, however, find evidence that someone downloaded *pictures* to the iPad the day after Appellant's arrest.[258] And aside from NCIS's forensic review, SA Mike testified that she never tried to turn on Appellant's iPad 4 in an effort to locate the child pornography Ms. Hotel testified that she downloaded to the device in May of 2019.[259]

Further, in addition to the videos that could not be found, the Government argued during its closing argument that the videos in Prosecution Exhibit 13, which capture both Ms. November and Ms. Papa changing clothes, are themselves child pornography.[260] Specifically, the Government argued the videos of teenage girls changing their clothes constitute child pornography because they depict "a lascivious exhibition of the genitals."[261] And this happened after the Government convinced the military judge that the question of whether the Vivint videos support a conviction for production of child pornography "is a question of fact for the members to determine."[262]

While it is true that the Government also argued that Appellant could be convicted of producing child pornography on Ms. Hotel's testimony alone, we can only speculate as to how the members reached their verdict with respect

---

[255] R. at 905.

[256] R. at 1038; Appellant's Br. at 79.

[257] R. at 1387.

[258] R. at 1363-64.

[259] R. at 1200.

[260] R. at 1624-27.

[261] R. at 1625.

[262] Appellate Ex. XXXVII at 9; R. at 406.

to Specification 3 of Charge II.[263] We do know, however, that of the eleven videos on Prosecution Exhibit 13, two are from Appellant's iPhone 6s and five are from his iPad 4.[264] And all of these were created in December 2018, which is exactly when Appellant was last allegedly producing child pornography.[265]

Ultimately, the members acquitted Appellant of two specification of possessing child pornography and one specification of producing child pornography from on or about 1 January 2019 to on or about May 2019. But they convicted him of producing child pornography from on or about August 2016 to on or about 31 December 2018, which partially overlaps Ms. Hotel's testimony that she saw videos depicting Ms. November masturbating from 27 July 2017 to May of 2019.[266]

Finally, the Government elicited testimony from SA Mike that a search of the internet history of Appellant's iPad 4 reflected searches in February 2019 for "teen nude selfies" and "teen sexy selfie nudes."[267] A review of the iPhone 6s's internet history revealed a July 2018 search for "[redacted][268] 18 anal"[269] as well as additional searches for "teen nude selfies."[270] The Government argued this search history was evidence of Appellant's intent and proved he knowingly "was recording, possessing, producing" child pornography.[271]

In light of these facts, we conclude the Government has failed to meet its burden to prove error in this case is harmless beyond a reasonable doubt as it relates to Specification 1 of Charge I and Specification 3 of Charge II.

---

[263] R. at 1627.

[264] R. at 1626.

[265] R. at 1301; 1346-47; Pros. Ex. 21.

[266] R. at 1346.

[267] R. at 1177.

[268] The redacted search term included Ms. November's actual first name.

[269] R. at 1178.

[270] R. at 1178.

[271] R. at 1616.

### III. CONCLUSION

After careful consideration of the record, briefs, and oral argument of appellate counsel,[272] the finding of guilt as to Specification 3 under Charge I is **SET ASIDE** and is **DISMISSED WITH PREJUDICE**. The finding of guilt as to Specification 2 under Charge I is **AFFIRMED**. The findings of guilt as to Specification 1 under Charge I and Specification 3 under Charge II are **SET ASIDE.** The sentence is **SET ASIDE**. A rehearing is **AUTHORIZED**.[273]

FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[272] In light of this opinion, we do not reach Appellant's remaining assignments of error.

[273] Articles 59 & 66, UCMJ.